Johnny BEALL Jr., Appellant

v.

The STATE of Texas, State.

No. 2–06–193–CR.

Court of Appeals of Texas,
Fort Worth.

Oct. 4, 2007.

Dawn Moore, Boswell & Moore, P.C., Denton, TX, for Appellant.

Paul Johnson, Crim. Dist. Atty., John A. Stride, Chief, Appellate Division, Catherine Luft, Asst. Dist. Atty's for Denton County, Denton, for Appellee.

PANEL F: DAUPHINOT, HOLMAN, and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

Appellant Johnny Beall Jr. appeals from his conviction for possession of less than one gram of methamphetamine. In five points, he argues that the trial court erred by denying his motion to suppress and that the evidence is legally and factually insufficient to show that he possessed the drugs in question. We affirm.

### Background

Appellant was indicted for possession of methamphetamine after police discovered the drugs in a boot next to the pull-out

couch where Appellant slept in a Denton motel room. Appellant filed a motion to suppress, and the trial court heard and denied the motion immediately before trial. The following evidence, drawn from both the suppression hearing and the trial, is relevant to Appellant's points on appeal.

Denton Police Officer Paul Willenbrock testified at the suppression hearing and at trial. On January 1, 2006, Officer Willenbrock responded to a call from the desk clerk at the Comfort Suites motel in Denton. The clerk said she had received a phone call from a man who said his wife was doing drugs in room 222 while his daughter was present in the room. The clerk told Officer Willenbrock room 222 was registered to Ronnie Beall, and she gave Officer Willenbrock a photocopy of Ronnie's driver's license. Officer Willenbrock ran Ronnie's license through his computer and learned that Ronnie had a warrant outstanding for his arrest.

Officer Willenbrock called for backup, and Officers Buchanan and Nair responded to his call. Together, the officers went to room 222 and knocked on the door. Ronnie answered the door and presented a driver's license when asked to identify himself. Officer Willenbrock handed the license to Officer Buchanan to verify the outstanding warrant. Officer Willenbrock testified that he then asked Ronnie for permission to enter the room and Ronnie consented.

Officer Willenbrock found three people in the room: Ronnie, Appellant, and a woman later identified as Rebecca Yeary; the child made the basis of the original complaint was not there. He initially testified that he saw Appellant immediately upon entering the room, but later conceded that Appellant might have been in the shower. Officer Willenbrock awakened Yeary, who was asleep on one of the two beds in the room, and asked her where her daughter was. While doing so, he noticed a "butane torch lighter" of a kind he associated with drug use on the bedside table.

Officer Buchanan confirmed the warrant for Ronnie's arrest, and Officer Willenbrock placed him under arrest. Officer Willenbrock testified that he then "searched the area around where I arrested him" within a radius of six feet. In a trash can, he found a film canister containing marijuana cigarette butts and a glass pipe of the kind used for smoking drugs. Officer Willenbrock asked Appellant and Yeary if there were any more drugs in the room; they told him "no." Because there were only two beds in the room, Officer Willenbrock asked Appellant where he slept; Appellant indicated a pull-out couch in the back of the room. Officer Willenbrock testified that he then asked Appellant if he could search the area around the pull-out couch and that Appellant consented to the search. Officer Willenbrock testified that he asked for Appellant's permission to search the area "[b]ecause what I had so far didn't give me probable cause to search the entire hotel room."

Near the pull-out couch, Officer Willenbrock found a bag of clothing and a pair of boots. Inside one of the boots he saw a black leather pouch. He removed the pouch from the boot, opened it, and discovered three cellophane baggies containing what he believed to be marijuana, a Ziploc baggie containing what appeared to be methamphetamine, and a marijuana pipe, some pipe filters, and rolling papers. Officer Willenbrock arrested Appellant. He testified that Appellant then said "it was for his personal use, and he apologized for lying about the drugs in the room." Officer Willenbrock also said that Appellant's appearance at the time of his arrest was consistent with drug use.

Appellant testified briefly at the suppression hearing but not at trial. He said

he was in the shower when the police knocked on the door, and they were already searching through his belongings when he came out of the shower. He denied that anyone asked him for consent to search the area around the pull-out couch and denied having said the drugs were for his personal use; he testified, somewhat ambiguously, "I may have apologized for the drugs being found, but not saying they were mine."

Officer Buchanan testified at trial. He confirmed that Officer Willenbrock asked Appellant for permission to search the area near the couch and Appellant consented. He also testified that after Officer Willenbrock found the drugs, Appellant said the drugs belonged to him for his personal use and apologized for lying to the officers.

Ronnie also testified at trial. He said Appellant was in the shower when the police knocked on the door and did not come out until the police had already handcuffed Ronnie. He did not hear the officers ask Appellant for consent to search his belongings. Nor did he hear Appellant say that the drugs were his or apologize for lying to the officers, but he volunteered, "I couldn't really hear."

The trial court denied Appellant's motion to suppress. A jury convicted Appellant of possession of methamphetamine of less than one gram and assessed punishment at two years' confinement, and the trial court rendered judgment accordingly. This appeal followed.

## Discussion

### A. Motion to Suppress

In his first three points, Appellant argues that trial court erred by denying his motion to suppress because the police had no legal justification for entering the motel room or for remaining in the motel room after they arrested Ronnie and that the search which discovered the methamphetamine violated his rights under the United States and Texas Constitutions and the Texas Code of Criminal Procedure.[1] Stated another way, Appellant contends that the police did not have justification to enter, they did not have justification to stay, and they did not have justification to search.[2]

### 1. Standard of review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Best v. State,* 118 S.W.3d 857, 861 (Tex. App.-Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); *State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App.1999). Therefore, we give almost total deference to the trial

1. We address Appellant's Fourth Amendment and article I, section 9 arguments together because he failed to separately argue and brief those contentions. *See Riddle v. State,* 888 S.W.2d 1, 7–8 (Tex.Crim.App.1994), *cert. denied,* 514 U.S. 1068, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995); *Arnold v. State,* 873 S.W.2d 27, 29 n. 2 (Tex.Crim.App.1993), *cert. denied,* 513 U.S. 830, 115 S.Ct. 103, 130 L.Ed.2d 51 (1994).

2. The State argues that Appellant forfeited these points by failing to raise them in the trial court. We disagree. When read together, the written motion to suppress and counsel's oral argument at the suppression hearing fairly encompass the points raised and argued on appeal.

court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex.Crim.App.2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex.Crim. App.2002); *State v. Ballman*, 157 S.W.3d 65, 68 (Tex.App.-Fort Worth 2004, pet. ref'd). But when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex.Crim.App.2005); *Johnson*, 68 S.W.3d at 652–53.

■ Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App.2006). When the record is silent on the reasons for the trial court's ruling, or when, as here, there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Id.* We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Id.*

■■ In determining whether a trial court's decision is supported by the record, we generally only consider evidence adduced at the suppression hearing only because the ruling was based on it rather than on evidence introduced later. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim. App.), *cert. denied*, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996). But this general rule is inapplicable where the suppression issue has been consensually relitigated by the parties during the trial on the merits. *Id.* Where the State raises the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to re-open the evidence, and consideration of the relevant trial testimony is appropriate in our review. *Id.* In this case, the parties relitigated the suppression issue when both parties offered evidence relevant to the issue at trial and Appellant renewed his motion to suppress when the State rested. We will, therefore, consider both the evidence presented at the suppression hearing and the evidence presented at trial.

### 2. Applicable Law

■ Under the Fourth Amendment, a search conducted without a warrant issued on probable cause is per se unreasonable unless it falls within one of the well-established exceptions to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973); *Reasor v. State*, 12 S.W.3d 813, 817 (Tex.Crim.App.2000). Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Carmouche*, 10 S.W.3d at 331 (citing *Schneckloth*, 412 U.S. at 219, 93 S.Ct. at 2043–44). Article 38.23 of the code of criminal procedure precludes the admission of evidence obtained in violation of the Constitution. TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2006).

### 3. Justification to enter

■ Appellant argues that his suppression-hearing testimony and Ronnie's trial testimony establish that he was in the shower when the police entered the motel room; therefore, argues Appellant, he could neither consent nor object to the entry, and any evidence seized must be suppressed despite Ronnie's consent to the

entry. Appellant relies on the Supreme Court's opinion in *Georgia v. Randolph* to support his argument. 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).

*Randolph* does not support Appellant's argument. In that case, the defendant's wife told police that the defendant had drugs inside the communal home. *Id.* at 107, 126 S.Ct. at 1519. An officer asked the defendant for permission to search the home, which he unequivocally refused. *Id.* The officer turned to the wife for consent, which she readily gave. *Id.* She led the officer upstairs to a bedroom that she identified as the defendant's, where the officer found a drinking straw with a powdery residue he suspected was cocaine. *Id.* Police then obtained a warrant, searched the house, and seized further evidence of drug use, on the basis of which the defendant was indicted for possession of cocaine. *Id.* The defendant unsuccessfully moved to suppress the evidence as products of a warrantless search of his house over his express refusal. *Id.*

The Supreme Court noted that the Fourth Amendment, while ordinarily prohibiting the warrantless entry of a person's home as unreasonable per se, recognizes the validity of searches with the voluntary consent of an individual possessing authority or a fellow occupant who shares authority over property. *Id.* at 109, 126 S.Ct. at 1520. But where one cotenant gives consent and the other cotenant is present and objects, the "disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all." *Id.* at 114, 126 S.Ct. at 1523. In other words, disputed consent is no consent. *See id.* at 115, 126 S.Ct. at 1524 ("Disputed permission is thus no match for this central value of the Fourth Amendment[.]").

Appellant acknowledges the key difference between this case and *Randolph;* unlike the defendant in *Randolph,* Appellant did not object to the officers' entry into the motel room. But Appellant argues that he had no opportunity to object because he was in the shower when the police arrived. Appellant urges us to clarify *Randolph's* "protections ... as they apply to co-occupants who are readily available and present on the premises but not part of the initial encounter with the police at the inception of the entry...."

For the clarification Appellant seeks regarding *Randolph,* we need not look beyond *Randolph* itself. Tying up a "loose end" created by its holdings in two other cases, the Supreme Court held that "we have to admit that we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas a potential objector, nearby but not invited to take part in the colloquy, loses out." *Id.* at 121, 126 S.Ct. at 1527. The Supreme Court distinguished the facts in *Randolph* from the facts in the two other cases, *Matlock,* where the defendant was not present and did not have the opportunity to object to a search to which his cotenant consented, but he was in a squad car not far away; and *Rodriguez,* where the defendant was asleep in a bedroom when his cotenant admitted police to their communal residence. *Id.* (distinguishing *Illinois v. Rodriguez,* 497 U.S. 177, 180, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990) and *United States v. Matlock,* 415 U.S. 164, 166, 94 S.Ct. 988, 991, 39 L.Ed.2d 242 (1974)). The Court upheld the validity of the entries and searches in both *Rodriguez* and *Matlock. Rodriguez,* 497 U.S. at 189, 110 S.Ct. at 2801; *Matlock,* 415 U.S. at 177, 94 S.Ct. at 996.[3]

---

**3.** The key issue in *Rodriguez* was whether the police reasonably believed the "cotenant,"

who they later learned did not actually live in

The case before us is factually similar to *Matlock* and even more so to *Rodriguez*. Appellant, like the defendants in *Matlock and Rodriguez*, stands on the wrong side of the "fine line" drawn by the Supreme Court in *Randolph*; as a potential objector, nearby but not invited to take part in the colloquy between Ronnie and the police, he loses out. *See Randolph*, 547 U.S. at 121, 126 S.Ct. at 1527.

### 4. Justification to stay

■ Appellant next argues that even if the officers' entry was justified by Ronnie's consent, that justification ended when they verified the girl made the subject of the initial complaint was not there, arrested Ronnie, and completed their search incident to Ronnie's arrest. We disagree.

In *Reasor v. State*, the court of criminal appeals held that a defendant's consent to search his house, given after police illegally entered the house to conduct a "security sweep," attenuated the taint of the illegal entry. 12 S.W.3d 813, 819 (Tex.Crim.App. 2000). The same logic applies to this case. Assuming for the sake of argument that the officers' continued presence in the motel room after they had completed Ronnie's arrest and the related search was an illegal "entry," Appellant's consent to the search of the area around his bed removed the taint of that entry. In other words, under these circumstances the consent to search necessarily implied the consent to remain in the motel room long enough to complete the search, just as the defendant's consent to search in *Reasor* implied his consent for police to remain in his house after their initial, illegal entry. Therefore, we hold that Appellant's consent to search—assuming for the moment his consent was valid—justified the offi-

cers' continued presence in the motel room.

### 5. Justification to search

■ Finally, Appellant argues that his consent to search (which he denied having given) was involuntary because he was effectively detained by police. Again, we disagree.

■ In *Schneckloth*, the United States Supreme Court considered the definition of "voluntary consent" in the context of a search and seizure. 412 U.S. at 219, 93 S.Ct. at 2044. "When the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Id.* at 248, 93 S.Ct. at 2059. Voluntariness is a question of fact to be determined from the totality of the circumstances. *Id.* at 249, 93 S.Ct. at 2059. The Texas Constitution requires that the State prove by clear and convincing evidence that consent was voluntarily given. Tex. Const. art. I, § 9; *Montanez v. State*, 195 S.W.3d 101, 105 (Tex.Crim.App.2006); *Carmouche*, 10 S.W.3d at 331.

■ When determining voluntariness, courts consider various factors, including whether the consenting person was in custody, whether he was arrested at gunpoint, whether he had the option of refusing consent, the constitutional advice given to the accused, the length of detention, the repetitiveness of the questioning, and the use of physical punishment. *See Reasor*, 12 S.W.3d at 818; *Laney v. State*,

---

the residence, had authority to consent to their entry. *Rodriguez*, 497 U.S. at 177, 110 S.Ct. at 2795. The Supreme Court held that if the police reasonably believed she had such authority, then the entry was reasonable, and

it remanded the case for further proceedings to determine whether the officers' belief was reasonable. *Id.* at 188–89, 110 S.Ct. at 2801–02.

76 S.W.3d 524, 532 (Tex.App.-Houston [14th Dist.] 2002), aff'd, 117 S.W.3d 854 (Tex.Crim.App.2003). A warning that an individual does not have to consent to a search and has the right to refuse is not required nor essential. *Meeks v. State*, 692 S.W.2d 504, 510 (Tex.Crim.App.1985).

In this case, Appellant was not in custody, he was not arrested at gunpoint, and he was not subjected to repetitive questioning or physical punishment. On the other hand, the officers did not inform him that he had the right to withhold his consent. Assuming without deciding that Appellant was "detained" while officers arrested Ronnie, the record suggests that the detention was of short duration.

Deferring, as we must, to the trial court's resolution of the conflict between Officer Willenbrock's and Appellant's testimony as to whether Officer Willenbrock asked for Appellant's consent to search, and considering the totality of the circumstances surrounding Appellant's consent, we hold that Appellant's consent was voluntary and justified the officers' search of the area around his bed.

In summary, the officers' entry into the motel room was justified by Ronnie's consent to their entry. Their search of the area around Appellant's bed was justified by Appellant's consent, as was their remaining in the room long enough to conduct that search. Therefore, the trial court did not err by denying Appellant's motion to suppress, and we overrule his first three points.

## B. Sufficiency of the evidence to show possession

In his fourth and fifth points, Appellant argues that the evidence is legally and factually insufficient to show that he exercised actual care, control, custody, or management over the drugs recovered from the boot by his bed.

### 1. Standard of review

When reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Hampton v. State*, 165 S.W.3d 691, 693 (Tex.Crim.App.2005).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex.Crim.App.2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex.Crim.App.2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000).

### 2. Applicable law

To support a conviction for unlawful possession of a controlled substance, the State must affirmatively link the accused to the contraband by proving that the accused (1) exercised control, management, or care over the contraband and (2) knew the substance he possessed was contraband. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(38), 481.112(a) (Vernon 2005); *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex.Crim.App.2005); *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim. App.1995). Under the "affirmative links" rule, when the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that he had knowledge of and control over it unless there are additional independent

facts and circumstances which affirmatively link him to the contraband. *Poindexter,* 153 S.W.3d at 406. That is, the evidence must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. *Id.* at 405–06; *Tucker v. State,* 183 S.W.3d 501, 510 (Tex.App.-Fort Worth 2005, no pet.).

 Affirmative links can be proven by direct or circumstantial evidence. *Brown,* 911 S.W.2d at 747. Factors we consider include (1) Appellant's presence during the search, (2) whether the drugs were in plain view, (3) Appellant's proximity to and the accessibility of the drugs, (4) whether he was under the influence of narcotics when arrested, (5) whether he possessed other contraband or narcotics when arrested, (6) whether he made incriminating statements when arrested, (7) whether he attempted to flee, (8) whether he made furtive gestures, (9) whether there was an odor of the contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether he owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether he was found with a large amount of cash, and (14) whether his conduct indicated a consciousness of guilt. *See Tucker,* 183 S.W.3d at 510. The number of relevant factors is less significant than the logical force of the link they establish between the accused and the controlled substance. *See Hudson v. State,* 128 S.W.3d 367, 374 (Tex. App.-Texarkana 2004, no pet.).

 Affirmative links are established by the totality of the circumstances. *See Wootton v. State,* 132 S.W.3d 80, 87 (Tex. App.-Houston [14th Dist.] 2004, pet.

ref'd). In deciding whether the evidence is sufficient to link a defendant to contraband, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Poindexter,* 153 S.W.3d at 406.

### 3. Affirmative links

 In this case, there is direct and compelling evidence of the sixth *Tucker* factor, whether Appellant made incriminating statements when arrested: Officers Willenbrock and Buchanan testified that Appellant told them that the drugs were for his personal use. While there is little or no evidence of the circumstantial *Tucker* factors, other circumstantial evidence that does not fit neatly into the *Tucker* list supports an affirmative link between Appellant and the drugs. They were found in a boot next to the bed where he slept.[4] Officer Willenbrock testified that Appellant's appearance at the time of his arrest was consistent with drug use.

Viewing the direct and circumstantial evidence in the light most favorable to the verdict, we hold that the evidence of affirmative links between Appellant and the drugs is legally sufficient to support the jury's verdict that he possessed the drugs. Viewing the evidence in a neutral light, we hold that it is also factually sufficient. Therefore, we overrule Appellant's fourth and fifth points.

### Conclusion

Having overruled all of Appellant's points, we affirm the trial court's judgment.

---

4. Appellant argues that the evidence supports the conclusion that the boots belonged to Ronnie because Ronnie was barefoot when arrested. But Ronnie's testimony that Appel-

lant was in the shower when the police entered the room supports the equally reasonable conclusion that Appellant was barefoot, too, and that the boots belonged to him.