COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 2-09-295-CR

 

 


 
 
 JAMES TERRY HARPOLE
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


                                                                                                                             

 

------------

 

FROM THE 355TH
 DISTRICT COURT OF HOOD
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

          Appellant James Terry Harpole appeals
his conviction for possessing less than one gram of methamphetamine.[2]  In four related points that he briefs
together, appellant argues, in sum, that a state trooper’s request for consent
to search him occurred after the purpose of the initial traffic stop had been
achieved, which rendered the search unconstitutional and the resulting evidence
inadmissible.  We affirm.








Background Facts

          Late one night in December 2007, State
Trooper Kristopher S. Hall, who was riding with another trooper, stopped
appellant because appellant’s front left headlight was not working and he
failed signal a left turn.  Appellant
engaged in some small talk with Trooper Hall and surrendered his driver’s
license and proof of insurance.  For the
officers’ safety, Trooper Hall asked appellant to get out of the truck, and
then appellant answered questions from Trooper Hall.  Appellant admitted to having been arrested
“four or five” times and said that he had used illegal drugs in the past.  Appellant also disclosed the possibility of
having an outstanding traffic-related warrant. 
Trooper Hall saw that appellant was nervous, had eyes as “wide as
saucers,” and was speaking rapidly and loudly.

          During the questioning on the side of
the road, Trooper Hall asked, “Mr. Harpole, is there anything illegal in your
truck today?”  Appellant responded, “No
sir, you can search it.”  Trooper Hall
did not act upon the consent to search at that time.

Upon speaking to dispatch, Trooper Hall discovered that appellant had a
suspended license; thus, Trooper Hall wrote a citation for an invalid driver’s
license in addition to a warning for an inoperable headlight.  While Trooper Hall was issuing the citation
and explaining appellant’s responsibilities with respect to it, he noticed a
change of demeanor in appellant; appellant’s voice became more subdued while
his body language became more defensive, which made Trooper Hall
suspicious.  Trooper Hall handed the
citation to appellant, and immediately after doing so, Trooper Hall said to
appellant, “You said it’s alright for me to search your truck?”  Appellant said, “Yes, sir.”  Trooper Hall then said, “It’s ok to search
you?”  Appellant again said, “Yes,
sir.”  Trooper Hall promptly found a
methamphetamine pipe in the pocket of appellant’s jacket.[3]

Appellant was arrested and indicted for possessing methamphetamine of
less than one gram, to which he pled not guilty.  Appellant’s trial counsel unsuccessfully
attempted to suppress Trooper Hall’s search through a pretrial motion and again
at the start of the trial, and the case proceeded to a trial before a
jury.  The jury found appellant guilty,
and under the parties’ agreement, the trial court sentenced him to twenty-four
months’ confinement, suspended the sentence, and placed appellant on community
supervision.  Appellant filed his notice
of appeal.

The Denial of Appellant’s Motion
to Suppress

We review a trial court’s ruling on a motion to suppress evidence under
a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
We give almost total deference to a trial court’s rulings on questions
of historical fact and application-of-law-to-fact questions that turn on an
evaluation of credibility and demeanor, but we review de novo
application-of-law-to-fact questions that do not turn on credibility and
demeanor.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  

          The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.  U.S. Const. amend.
IV; Wiede v. State, 214 S.W.3d 17, 24
(Tex. Crim. App. 2007).  To suppress
evidence because of an alleged Fourth Amendment violation, the defendant bears
the initial burden of producing evidence that rebuts the presumption of proper
police conduct.  Amador, 221 S.W.3d at 672; see
Young v. State, 283 S.W.3d 854, 872 (Tex. Crim. App.), cert. denied, 130 S. Ct. 1015 (2009).  A defendant satisfies this burden by
establishing that a search or seizure occurred without a warrant.  Amador,
221 S.W.3d at 672.  Once the defendant
has made this showing, the burden of proof shifts to the State, which is then
required to establish that the search or seizure was conducted pursuant to a
warrant or was reasonable.  Id. at 672–73; Torres v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d 488, 492 (Tex.
Crim. App. 2005). 

           Warrantless searches may be validated by a
defendant’s voluntary consent to be searched. 
See Johnson v. State, 226
S.W.3d 439, 443–47 (Tex. Crim. App. 2007); Gutierrez
v. State, 221 S.W.3d 680, 686–88 (Tex. Crim. App. 2007).  In other words, a
search based on voluntary consent is not unreasonable.  See
Reasor v. State, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000).  

          Appellant
does not contest the legality of Trooper Hall’s stopping his truck for traffic
violations, the validity of any of the troopers’ actions before Trooper Hall
gave appellant the citation, or the overall length or reasonableness of his
initial detention.  Also, appellant does
not assert the involuntariness of his consent to be searched.[4]  Instead, he
contends that once the reason for the stop was complete and Trooper Hall had
given the citation, Trooper Hall’s continued detention of him, in which Trooper
Hall gained his consent for the search, was unreasonable and illegal, and “any
searches conducted during the period of illegal detention [are] inadmissible
‘fruits of the poisonous tree.’”

          Precedent
precludes appellant’s argument.  In Saldivar v. State, an officer wrote
Saldivar citations for various crimes and told Saldivar about his duties
related to the citations.  209 S.W.3d 275,
278–79 (Tex. App.—Fort Worth 2006, no pet.) (mem. op.).  After the officer told Saldivar that he was
free to leave, the officer asked Saldivar questions that caused Saldivar to
admit that he was possessing cocaine.  Id. at 279.  Saldivar gave consent to the officer to
search his vehicle, and the officer found the cocaine.  Id.  The trial court denied Saldivar’s motion to
suppress, and on appeal, Saldivar argued that the officers that were involved
in his detention “were required to issue his citations and to release him as
soon as they finished, and that his Fourth Amendment rights were violated
because they unduly prolonged the investigation, without reasonable suspicion,
by asking whether he had anything other than alcohol in his vehicle.”  Id.
at 279, 282.  We rejected Saldivar’s
argument under the following rationale:

          A detention may last no longer than is
necessary to effectuate the purpose of the stop.  Once the purpose has been satisfied, the stop
may not be used for an unrelated “fishing expedition.”  Once an officer concludes the investigation of
the conduct that initiated the stop, a continued detention is permitted
only if there is reasonable suspicion to believe another offense has been or is
being committed.

 

          But it is not per se unreasonable
to ask questions or request consent to search after a detention is completed,
as long as a message is not conveyed by the officer’s words or acts that
compliance is required.  The officer may
not further detain the occupant or the vehicle if consent is refused, unless
reasonable suspicion of some criminal activity exists. 

 

          The Fourth Amendment does not require
that a lawfully seized defendant must be advised that he is “free to go” before
his consent to a search will be recognized as voluntary. . . .

 

                        . . . .

 

          Because we hold that Appellant was no
longer detained when Corporal Long asked him if he had any contraband in his
jeep, Appellant's response to the question was voluntary, as was his consent to
retrieve the cocaine.

 

Id. at 282–85 (citations and footnotes omitted).

 

          Similarly,
in James v. State, James contended
that there was “no reasonable basis for continued detention and search after
the purpose of the original stop was effectuated.”  102 S.W.3d 162, 167 (Tex. App.—Fort Worth 2003,
pet. ref’d).[5]  We
disagreed with James’s assertion, stating,

          It is not unreasonable per se
to request consent after completion of a traffic stop. 

 

          A police officer may approach a
citizen without probable cause or even reasonable suspicion to ask questions or
obtain consent to search.  Likewise, reasonable
suspicion is not required for a police officer to request consent to search an
automobile after the reason for an initial stop is concluded as long as a
message is not conveyed that compliance is required. 

 

      . .
. .

 

          Officer Faglie had both written and
verbal consent from James, in whose name the vehicle was rented.  In light of the totality of the circumstances,
and absent a contention that consent was involuntary or that a reasonable
person would not have felt free to leave,[[6]] we conclude that the subsequent search and
seizure of the contraband were not illegal.

 

Id. at 173 (citations omitted).  Other courts have likewise held that officers
may ask for consent to search a defendant or the defendant’s vehicle after
finishing a traffic stop, without having reasonable suspicion to do so, as long
as the officers do not convey that compliance with the request is
required.  See Magana v. State, 177 S.W.3d 670, 673 (Tex. App.—Houston [1st
Dist.] 2005, no pet.); Levi v. State,
147 S.W.3d 541, 544 (Tex. App.—Waco 2004, pet. ref’d); see also Strauss v. State, 121 S.W.3d 486, 491 (Tex. App.—Amarillo 2003,
pet. ref’d) (“[O]nce the purpose of the stop has been effectuated and the
officer’s suspicions allayed, he may still ask the driver if he possesses any
illegal contraband and then solicit his voluntary consent to search the vehicle.”).

          Appellant
relies on Davis v. State to contend
that his motion to suppress should have been granted.  947 S.W.2d 240, 242–46 (Tex. Crim. App. 1997).  For the reasons that we stated in James, Davis is distinguishable.  See James, 102 S.W.3d at 173 (“[James]
argues that, under Davis, the officer
must have discovered new or additional facts creating a reasonable basis for
seeking consent to the continued detention and search.  Davis
does not stand for that proposition.”).  


Appellant also cites Lambeth v. State to contend that Trooper
Hall needed to have reasonable suspicion to ask him to give consent after
issuing the citation.  221 S.W.3d 831,
834 (Tex. App.—Fort Worth 2007, pet. ref’d) (en banc) (op. on reh’g).  In Lambeth,
after Lambeth refused consent for a
trooper to search a car and the trooper issued traffic citations to Lambeth,
the trooper called for a canine unit and informed Lambeth that he was not free to leave.  Id.
at 834–35.  We held that the continued
detention was justified by reasonable suspicion because just before issuing the
citations, the trooper smelled marijuana on appellant.  Id.
at 837–38.  Here, unlike in Lambeth, reasonable suspicion was not
required at the time appellant gave consent for the search; appellant never
refused to give consent to the search, and Trooper Hall did not explicitly inform
appellant that he was not free to leave before or after the citations had been
issued.  Trooper Hall also did not take
any action, such as holding appellant’s license, to imply that appellant was
not free to leave when Trooper Hall gave appellant the citation and asked for
consent to search him.

For all of these reasons,
we conclude that appellant’s consent for Trooper Hall to search him is not
rendered ineffective merely because it came immediately after appellant’s
detention had ended.  Thus, we hold that
Trooper Hall’s search is legal based on appellant’s consent, and we overrule
appellant’s four points.  

Conclusion

Having overruled
appellant’s points, we affirm the trial court’s judgment.

          

 

                                                                   
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                   
 
 
 CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July 29, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Health & Safety
Code Ann. '' 481.102(6), .115(b)
(Vernon 2010).





[3]Trooper
Hall did not tell appellant that he was free to leave once he received the
citation, but Trooper Hall did not tell appellant that he was not free to leave
or that his detention would continue if he refused consent to be searched.





[4]A
search based on consent is not voluntary when, under various factors, it has
been induced by duress or coercion.  Vafaiyan v. State, 279 S.W.3d 374, 381
(Tex. App.—Fort Worth 2008, pet. ref’d); Beall
v. State, 237 S.W.3d 841, 849 (Tex. App.—Fort Worth 2007, no pet.)
(explaining that a “warning that an individual does not have to consent to a
search and has the right to refuse is not required nor essential”).





[5]In
James, an officer gave a warning
citation to the driver and then asked James, who was the passenger and the
renter of the car, for consent to search it, at which point James
consented.  Id. at 168.  Upon searching
the car, officers found over four hundred pounds of drugs.  Id.





[6]Appellant
does not directly contend that he believed that he was not free to leave when
Trooper Hall gave him the citation and then asked for consent to search.