**Opinion issued March 28, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00533-CR

———————————

**ROBERT RAYMOND COX, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Case No. 22-CR-0983**

---

### MEMORANDUM OPINION

Appellant Robert Raymond Cox was convicted by a jury of the second-degree felony of possession of a controlled substance in an amount of four grams or more but less than 200 grams. Based on enhancements from two prior convictions, the jury assessed a sentence of twenty-five years' incarceration.

In a single issue, Cox argues the evidence is legally insufficient to sustain his conviction. Finding no reversible error, we affirm.

**Background**

On March 29, 2022, Cox was driving a truck in Galveston County, Texas when a police officer pulled him over for having an expired registration and expired insurance. Cox and the officer drove onto a public driveway and pulled over. Cox told the officer he had several unpaid tickets issued by the League City Police Department. The officer directed Cox to step out of his truck while he checked to see if there were outstanding warrants for Cox's arrest. Cox got out of his truck and stood near the front of the police car.

After learning Cox had several outstanding warrants for his arrest, the officer arrested Cox and put him in his patrol car. Between the time the officer drove onto the driveway behind Cox and the time Cox was arrested for outstanding warrants, handcuffed, and placed in the back of the police car, a baggie of methamphetamines appeared under the front of the police car. Only Cox and the officer were in front of the police car between the time they arrived on the driveway and the time the officer found the narcotics.

Cox was eventually indicted for possession of a controlled substance. The indictment alleged that "on or about the 29th day of March, 2022," Cox "did then and there intentionally and knowingly possess a controlled substance, namely

2

methamphetamine, in an amount of four grams or more but less than 200 grams." Cox pleaded not guilty and the case proceeded to a jury trial.

## The Trial

Two witnesses testified during the guilt-innocence phase of trial.

### A.    Officer Stephen Perez

League City Police Officer Stephen Perez testified that on March 29, 2022, he conducted a traffic stop, pulling over a pickup truck that had expired license plates and insurance.  Cox was the only occupant of the truck.[1]  Cox told Officer Perez he had some unpaid tickets from the League City Police Department.[2] Officer Perez told Cox to get out of the truck and to move to the front of the police car.  A short time later, Cox was handcuffed and taken into custody because there were three active warrants for his arrest.

According to Officer Perez, Cox told Officer Perez he was a handyman. Officer Perez told Cox he could call a friend to retrieve Cox's tools from his truck before it was towed.[3]  Officer Perez conducted an inventory of Cox's truck at the site.  After conducting the inventory[4] and helping Cox's friend take Cox's items

---

[1]    Cox told the officer the truck belonged to a friend but he was planning to buy it.

[2]    The outstanding tickets were for traffic violations.

[3]    Officer Perez testified that police policy requires officers to inventory a vehicle before having it towed.

[4]    During the inventory of Cox's truck, Officer Perez found a pool cue case that had a "little cellophane bag and it had a single rock in that—inside that bag there was a

out of the truck, Officer Perez found a baggie containing a "white crystal-like substance" under the front of his patrol car. He identified it as being similar to methamphetamine. Officer Perez's dashcam video shows that the baggie was not there when he first drove onto the public driveway behind Cox. The white baggie is first visible on Officer Perez's bodycam video approximately ten minutes after he and Cox pull into the driveway.[5] When first seen on the bodycam video, the baggie is under Officer Perez's front license plate.

Officer Perez did not notice the baggie until his fifteenth or sixteenth time walking from Cox's truck to his police car. When Officer Perez recovered the baggie, the baggie was on the ground in front of the driver's side of his police car. The dashcam video shows that no one other than Officer Perez or Cox walked directly in front of the police car or stood in front of it before Officer Perez discovered the baggie.

According to Officer Perez, the bodycam video shows Cox, who "kind of blades his body. And with his right hand, he has in his pocket; and with his left, I don't see what he's doing down there. And he just turns around and puts his back towards me, and looks like he's doing some kind of motion with his foot or with

brown-rock-like substance." The bag field-tested positive for methamphetamine. Cox told Officer Perez he did not know anything about the substance in the bag. The substance was not tested by the Department of Public Safety's lab and was not part of the charge against Cox.

[5] The baggie is visible on the bodycam video for nearly thirty minutes before Officer Perez sees it.

4

his leg, and he turns to the front and does that same motion." Officer Perez testified he did not see Cox take anything from his pocket and throw it down.

Officer Perez field tested the substance in the baggie. It presumptively tested positive for 8.12 grams of methamphetamines. He did not find methamphetamines on Cox.

Officer Perez testified that it was windy the day he arrested Cox. The dashcam video shows what appears to be a piece of paper blowing out of Cox's truck and across the driveway. The videos do not show the baggie being blown under or around the car.

Officer Perez took Cox to the League City Jail. After he was released to the jail staff, Officer Perez took the white powder in the baggie to the evidence room "to get it tested, weighed, sealed, and packaged." The baggie was not fingerprinted or tested for DNA.

**B.    Steven Holonich**

Steven Holonich works for the Department of Public Safety in its Tyler Crime Laboratory. He tested the drugs found in the baggie under Officer Perez's police car and determined the baggie contained 8.06 grams of methamphetamine. He testified that to his knowledge, the baggie was not tested for fingerprints or in any way that could "tie it to any individual."

5

The jury convicted Cox, found two enhancements from prior convictions true, and assessed his punishment at twenty-five years' incarceration. This appeal ensued.

## Standard of Review

We apply the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979) in determining whether the evidence is sufficient to support each element of a criminal offense that the state must prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We review the legal sufficiency of the evidence by determining "whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). Under a legal sufficiency review, "our role is not to become a thirteenth juror. This Court may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (quoting *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)). Our role in this review is to act as a "due process safeguard," requiring us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the offense of which he is accused.

*Malbrough v. State*, 612 S.W.3d 537, 559 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (citing *Williams*, 235 S.W.3d at 750).

We may consider both direct and circumstantial evidence in our legal sufficiency analysis, as well as any reasonable inferences that may be drawn from the evidence. *Id.* "[C]ircumstantial evidence alone can be sufficient to establish guilt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Evidence may be sufficient to sustain the conviction even if the State does not "disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt." *Malbrough*, 612 S.W.3d at 559; *see also Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) ("[T]he State's burden does not require it to disprove every conceivable alternative to a defendant's guilt."). "Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

**Analysis**

Cox was convicted of intentionally or knowingly possessing a controlled substance, namely methamphetamine, in an amount of more than 4 grams but less than 200 grams. Methamphetamines are in penalty group 1. TEX. HEALTH & SAFETY CODE § 481.102(6). Knowing or intentional possession of a controlled substance from penalty group 1 is a felony of the second degree if the amount

possessed is grater than four grams and less than 200 grams. *Id.* § 481.115(a), (d). "Possession" is defined as "actual care, custody, control, or management." *Id.* § 481.002(38).

Cox argues the evidence "is insufficient to affirmatively connect him" to the controlled substance, which Officer Perez "found in a public place." He posits that on the day he was arrested, it was a windy day, and "there were other items that were blowing around,"[6] although nothing was found under the police car except for the baggie containing the drugs. Cox argues that Officer Perez's video footage "demonstrates that a baggie was being blown across a driveway where [he] was stopped on a very windy day."[7] Cox also says the recovered baggie "can first be seen several feet away from where it was recovered."[8] He argues, "Appellant was convicted of possessing a plastic baggie that was being blown across the driveway where he was pulled over for no insurance and no registration."

---

[6] Officer Perez's dash cam shows what appears to be a piece of paper blowing out of Cox's truck. The video footage confirms it was a windy day.

[7] The video footage does not support this statement. A review of the dashcam and the bodycam videos does not show the baggie "being blown across [the] driveway."

[8] There is no indication anyone measured the distances between the place the baggie was first seen and the place where it was recovered, and a review of the video footage indicates it could have been a difference of less than "several feet." Cox argued in his closing the baggie was found "about two feet in front" of the police car, but the footage does not necessarily support that. Again, apparently no measurement was taken, and it appears the baggie could have been discovered less than a foot in front of the police car.

8

Cox also argues Officer Perez testified he did not see him reach into his pocket, grab something, and throw it on the ground, and that he never saw Cox with the drugs. Cox acknowledges, however, that Officer Perez testified he "thought he saw Appellant make a kicking motion with his foot." Cox argues the baggie containing the drugs was not fingerprinted or subject to DNA testing, so there is no direct evidence linking Cox to the baggie.

The State argues there was sufficient evidence for the jury to conclude Cox knowingly or intentionally possessed the drugs. The dashcam video showed there was no baggie on the driveway when Officer Perez and Cox first pulled into the driveway. The baggie was first visible after Cox was told to stand in front of the police car, where he was "fidgeting, pulling things out of his pockets" and "shuffling." Although the drugs were found in a public place, testimony and video evidence showed that only Cox and Officer Perez were in front of the police car between the time they arrived on the driveway and the time Cox was taken into custody. And neither the dashcam nor the bodycam video showed that anything blew under the police car.[9]

---

[9] The parties differ on what the video footage shows. Cox argues the videos do not show him kicking anything. The State argues the jury saw footage of Cox's "furtive gesture to conceal the left side of his body, Cox kicking under the patrol car several times and bending over as if to look under the front of the patrol car."

## A. The "Affirmative Links" Rule

Cox argues he never had exclusive control of the area near the patrol car under which the baggie of methamphetamines was found. He argues that because he was not found with any narcotics or paraphernalia on him, "the law requires sufficient affirmative links to the narcotics to sustain a conviction."

Cox correctly argues that to prevail in prosecuting a defendant for possession of a controlled substance, the State must prove the defendant exercised control, management, or care over the substance, and the defendant knew the substance was contraband. *See Tate*, 500 S.W.3d at 413; *see also Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006) ("Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous."). As the Court of Criminal Appeals has explained:

> This is the so-called "affirmative links" rule which protects the innocent bystander—a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to someone else's drugs. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., "links"), may well be sufficient to establish that element beyond a reasonable doubt.

*Id.* at 161–62 (internal citations omitted).  Affirmative links "are established by the totality of the circumstances."  *Beall v. State*, 237 S.W.3d 841, 850 (Tex. App.—Fort Worth 2007, no pet.).

The Court of Criminal Appeals has adopted a "non-exclusive list of fourteen factors" that "may indicate a link connecting the defendant to the knowing possession of contraband."  *Tate*, 500 S.W.3d at 414.  Those factors are:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* (quoting *Evans*, 202 S.W.3d at 162 n.12).  "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial."  *Evans*, 202 S.W.3d at 162; *see also Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("[T]he number of factors actually supported by the evidence is not as important as the 'logical

force' they collectively create to prove that a crime has been committed.").[10] While the factors are intended to help guide the court's analysis, the ultimate inquiry is whether, "[b]ased on the combined and cumulative force of the evidence and any reasonable inferences therefrom," the jury was "rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, S.W.3d at 415 (citing *Jackson*, 443 U.S. at 318–19).

## B.    Analysis of the "Affirmative Links" Factors

Cox argues the lack of affirmative links and the probative force of the existing links demonstrates the evidence is insufficient to sustain his conviction. The State, quoting our opinion in *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd), responds that the "absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present."

Based on our review of the evidence, we conclude that three of the fourteen affirmative link factors establish a connection between Cox and the methamphetamines. The second factor, whether the contraband was in plain view, is implicated. The contraband was not in plain view when Officer Perez first pulled onto the driveway, but it is seen in plain view on the officer's dashcam

---

[10]    The affirmative links are "simply some factors which may circumstantially establish the legal sufficiency of the evidence to prove a knowing 'possession.' They are not a litmus test." *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006).

video approximately ten minutes after he and Cox pull into the driveway. The third factor, which considers Cox's proximity and accessibility to the drugs, also is present. Cox stood directly in front of the patrol car, where the baggie was first captured on Officer Perez's bodycam video, and no one other than Cox and Officer Perez stood or walked there before Officer Perez saw the baggie. Finally, the eighth factor, which contemplates furtive gestures,[11] is satisfied. The officer's dashcam video shows Cox appearing to reach for his back left pocket, fidgeting, shuffling his feet under or toward the police car, bending forward as if to look under the police car, and moving his feet again under or toward the police car. Although the dashcam does not explicitly show Cox kicking his feet, he is clearly moving his foot or feet toward the police car. Thus, factors 2, 3, and 8 establish affirmative links between Cox and the baggie.[12]

---

[11] *See Gill v. State*, No. 06-11-00213-CR, 2012 WL 2127504, at *3 n.2 (Tex. App.—Texarkana June 13, 2012, no pet.) (mem. op., not designated for publication) (noting "furtive" is defined as "surreptitious, underhanded, or by stealth.") (citing MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 509 (11th ed. 2006)); *see also Lopez v. State*, 267 S.W.3d 85, 94 n.26 (Tex. App.—Corpus Christi-Edinburg 2008, no pet.) (same).

[12] As Cox points out, the fifth factor, whether the defendant possessed other contraband or narcotics when arrested, is not satisfied. Although the "brown-rock-like substance" found in a pool cue case in Cox's truck field tested positive for methamphetamine, the substance was not tested by the DPS lab.

As noted, the number of affirmative links is not dispositive. *Evans*, 202 S.W.3d at 162.[13] The analysis must turn on the "logical force of all of the evidence, direct and circumstantial." *Id.*; *see also Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("The absence of various links does not constitute evidence of innocence to be weighed against the links present."); *Ferguson v. State*, 313 S.W.3d 419, 426 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("[I]t is well established that the absence of certain links do[es] not weigh against those that are present.").[14]

The State relies on three cases where drugs were found after a defendant occupied or passed through an open area. In *Hall v. State*, the defendant was convicted of unlawful possession of a controlled substance found on the ground where he had been standing. No. 13-11-00102-CR, 2012 WL 1573019, at *2 (Tex.

---

[13] *See, e.g., Foster v. State*, No. 08-22-00181-CR, 2023 WL 5732718, at *5 (Tex. App.—El Paso Sept. 5, 2023, pet. ref'd) (mem. op., not designated for publication) (finding two affirmative link factors sufficient to sustain jury's conviction); *Hardaway v. State*, No. 13-15-00507-CR, 2017 WL 3431827, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 10, 2017, pet. ref'd) (mem. op., not designated for publication) (finding three factors sufficient to sustain jury's conviction); *Beall v. State*, 237 S.W.3d 841, 850 (Tex. App.—Fort Worth 2007, no pet.) (finding "direct and compelling evidence" of only one factor but also finding circumstantial evidence "that does not fit neatly" into list of fourteen factors sufficient to sustain jury's conviction).

[14] *See also Larios v. State*, No. 13-15-00022-CR, 2015 WL 9487107, at *3 (Tex. App.—Corpus Christi–Edinburg Dec. 29, 2015, no pet.) (mem. op., not designated for publication) ("[A] jury was free to interpret the absence of these [affirmative] links either as signs of innocence or simply as signs that Larios was careful and collected in the way she pursued her task.").

App.—Corpus Christi–Edinburg May 3, 2012, pet. ref'd) (mem. op., not designated for publication). The arresting officer did not see Hall throw or drop anything but he found a bag of cocaine on the public street where Hall had been standing when he was placed in the officer's patrol car. *Id*. at \*5. The court noted that Hall resisted when the officers tried to move him, and when he did move, the drugs were found. *Id.* His resistance to movement was described as a "furtive gesture" that, along with the officer's observations, affirmatively linked him to the cocaine. *Id.* The court held that Hall's conduct, the officer's observations, "and the fact that Hall had a pending arrest warrant for dealing cocaine" when the cocaine was found "constituted enough independent facts and circumstances to affirmatively link him to the contraband and allow a jury to find the essential elements of the charged offense beyond a reasonable doubt." *Id*.

In *Lester v. State*, a motorcycle rider was pulled over and arrested for driving with a suspended license. No. 02-16-00288-CR, 2018 WL 3763897, at \*1 (Tex. App.—Fort Worth Aug. 9, 2018, pet. ref'd) (mem. op., not designated for publication). A police officer saw a bag filled with what he believed to be methamphetamine on the ground after the defendant walked by. *Id.* The officer saw a second baggie containing a similar substance fall out of the defendant's pants leg. *Id.* Among other things, the defendant argued the baggie found on the ground "must have blown in at the last second from some other location." *Id.* at

15

*4. The appellate court noted that the evidence showed "nothing was on the ground between the curb and patrol car prior to [the defendant] walking through; after [the defendant] reached the car, [the officer] found the ground baggie where [the defendant] had walked. The jury was within its rights to affirmatively link the ground baggie to [the defendant] and to infer that no intervening source possessed it." *Id.* However, the court noted other factors also tied the defendant to the baggie. For example, he possessed other narcotics that fell out of his pants leg in front of one of the officers, drug paraphernalia was found in his motorcycle, and he carried a large amount of cash. *Id.* at *5. The court stated, "The jury appropriately considered all these factors when it determined that [the defendant] was affirmatively linked to the methamphetamine." *Id.*

Finally, the State relies on *Rasool v. State*, in which a driver was pulled over for speeding. No. 06-05-00209-CR, 2006 WL 3111344, at *1 (Tex. App.—Texarkana Nov. 3, 2006, no pet.) (mem. op., not designated for publication). After the driver was taken into custody, police found a baggie containing a white substance on the ground where Rasool had been standing. *Id.* No one saw Rasool drop the baggie. *Id.* Rasool gave his correct name, admitted his license was suspended, acknowledged speeding, and did not make any furtive gestures. *Id.* at *2. Rasool argued the baggie could have come from any of the "large number of vehicles [that] come down the highway daily[.]" *Id.* The court held that while that

16

was possible, "we also recognize that there was evidence to show it had been on the ground very briefly, and the jury could reasonably conclude it was highly unlikely that Rasool would stand on the precise place where some passerby threw out a baggie of cocaine." *Id.* The jury convicted Rasool in a "classic example of a jury being allowed to form a conclusion based on circumstantial evidence." *Id.* at *3. The court observed that the "most important link between Rasool and the substance is that the substance was located on a roadside at the very place Rasool had been standing minutes before. This is strong evidence of the presence, proximity, and accessibility links." *Id.* The court noted that another baggie with contraband was found inside the car Rasool was driving. *Id.*

Each of these cases is distinguishable from this case in some aspect. In *Hall*, the court cited the defendant's pending arrest warrant for dealing cocaine as one of the circumstances that could have allowed the jury "to find the essential elements of the charged offense beyond a reasonable doubt." 2012 WL 1573019 at *5. In *Lester*, the jury heard testimony that other narcotics fell out of the defendant's pants, drug paraphernalia was found in his motorcycle, and he carried a large amount of cash. 2018 WL 3763897 at *5. And in *Rasool*, a second baggie with a controlled substance was found inside the car the defendant was driving. 2006 WL 3111344 at *3.

17

Despite some distinguishing facts, we find *Rasool* instructive. Like the present case, *Rasool* stemmed from a traffic stop. 2006 WL 3111344 at *1. After Rasool was taken into custody, a baggie containing a white substance was found where Rasool had been standing. *Id.* Rasool, like Cox,[15] was cooperative, but told authorities the baggie could have come from another vehicle on the highway. *Id.* at *2. The court concluded the most important link was that the drugs were recovered "at the very place Rasool had been standing minutes before." *Id.* at *3. The court held that fact was "strong evidence of the presence, proximity, and accessibility links." *Id.*

Similarly, the baggie in the present case was initially seen on Officer Perez's bodycam in the area where Cox was standing while Officer Perez communicated with the police about Cox's tickets and warrants. The jury, which also saw on the dashcam video that nothing was on the driveway when Officer Perez and Cox first arrived, could reasonably have concluded based on Cox's furtive gestures that he dropped the baggie onto the ground and shuffled it under the police car. The jury was free to disbelieve that Cox was merely acting "squir[r]ely," as his counsel argued, fidgeting "because maybe standing ten minutes in one place is a little bit much."

---

[15]    Officer Perez told another officer at the scene that Cox had been "nothing but hospitable" in their interaction.

18

In a circumstantial evidence case such as this, "it is not necessary for every fact to point directly or indirectly to the defendant's guilt. It is sufficient if the combined and cumulative effect of all the incriminating circumstances point to the defendant's guilt." *Sosa v. State*, 845 S.W.2d 479, 483 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (citing *Russell v. State*, 665 S.W.2d 771, 776 (Tex. Crim. App. 1983)). Viewing the evidence in the light most favorable to the jury's verdict, as we must, we cannot conclude the evidence was legally insufficient to support the jury's finding that Cox was guilty of the charged offense.

We overrule Cox's sole issue.

## Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Kelly, Countiss, and Rivas-Molloy.

Do not publish. TEX. R. APP. P. 47.2(b).