Dominic Dean Polk v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-315-CR

NO. 2-04-316-CR

NO. 2-04-317-CR

NO. 2-04-318-CR

NO. 2-04-319-CR

DOMINIC DEAN POLK APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 362
ND
 DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

A jury convicted Appellant Dominic Dean Polk of five burglaries of a habitation charged in separate indictments and assessed his punishment at twenty years’ confinement in the Institutional Division of the Texas Department of Criminal Justice in cause number 2-04-315-CR, which had no enhancement paragraphs, and at seventy five years’ confinement in the remaining four cases.  The jury also assessed a fine of $1000 in each of the five cases.  The trial court sentenced Appellant accordingly.

Appellant brings four points on appeal, challenging the admission of certain statements, the denial of requested jury instructions, and the trial court’s denial of a mistrial after prosecutorial misconduct.  Because we hold that the trial court did not reversibly err, we affirm the trial court’s judgments.

Background Facts

Appellant was arrested on December 5, 2003 and taken to jail.  While Appellant was incarcerated, Officer Fitzgerald attempted to discuss some burglaries with him.  Appellant refused to talk to Fitzgerald.  Fitzgerald, according to Appellant, threatened that if Appellant did not admit to all the burglaries, Fitzgerald would charge him with a new one every time he was released from jail.  Appellant admitted that he was on parole at the time of the burglaries.

The following day, Officer Crain attempted to speak with Appellant.  Appellant refused to talk to Crain.  Appellant subsequently made bail.  On December 18, 2003, Appellant was arrested again.  Appellant then confessed to four separate burglaries, providing two written statements, one on December 18 and one on December 19.  Appellant’s fingerprints were discovered in a fifth burglarized home.  On December 19, before giving his second written statement, Appellant accompanied Detective Smith and Detective Taylor as they drove around Denton so that Appellant could point out homes that he had burglarized.  The conversations during this excursion were not recorded by any means.

Written Statements

In his third point, Appellant argues that the trial court erred by failing to suppress his typed statements because the police failed to honor his invocation of his right to silence, and/or his right to terminate the police interviews, and  his right to counsel.  Although Appellant refused to talk to the officers on December 5, when he was rearrested on December 18, he was arrested for a new offense.  The invocation of his right to remain silent was case-specific and related only to those offenses for which he was arrested on December 5.
(footnote: 1)  After he talked to the officers regarding the new offense on December 18, he voluntarily continued to talk to them about all of the offenses.  Although Appellant mentioned attorneys on December 18, he never clearly and specifically requested his attorney.
(footnote: 2)  We therefore overrule Appellant’s third point.

Improper Impeachment

In his first point, Appellant contends that the trial court abused its discretion by admitting the State’s impeachment evidence.  After the State rested its case in chief, Appellant announced to the court that he was forced to put on a case because the trial court improperly admitted evidence, specifically his recorded and unrecorded statements.  On the stand, Appellant denied committing the burglaries.  He also testified that (1) his written statements were really the police officer’s, not his, (2) he did not point out houses that had been burglarized, and (3) Officers Smith and Taylor had lied about his words and actions.  Additionally, he testified that his drug problem was in the past and that he had confessed to the burglaries only because the officers had promised not to file half of them and had promised him drug rehabilitation.

After Appellant testified, the State called Keith Smith and Appellant’s parole officer, Cynthia Herndon.  Before their testimony, the prosecutor stated, outside the jury’s presence,

Because of the defendant’s testimony, I intend . . . to go into the statements that Mr. Polk made concerning the—while they were driving around identifying the houses that were burglarized and the specifics as to what items were taken out of those houses and if he provided any information to Mr. Polk beforehand.  I believe this is all permissible impeachment.

Appellant objected on the basis of Article 38.22, the Fifth Amendment, 
Miranda
,
(footnote: 3) the Fourteenth Amendment, and Article I, section 10 of the Texas Constitution.  Appellant requested a limiting instruction, but he refused the  limiting instruction “that questions regarding this are offered for impeachment purposes only, not for the truth of the matter asserted.”  The State said that no instruction was necessary because, as admissions of a party opponent, the statements were not hearsay.
(footnote: 4)  Appellant asked for a limiting instruction  indicating that the statements were not taken in compliance with statutory and constitutional requirements and “whatever the court would like to stick in as to why it’s being admitted,” which the trial court denied.

The trial court allowed the State to present without limitation the testimony of Detective Smith as to the unrecorded statements Appellant made while riding around with Smith and Taylor.  The trial court also allowed the State to present the testimony of parole officer Cynthia Herndon as to unrecorded statements Appellant made to her on December 22, 2003.  The trial court denied Appellant’s blanket request for a limiting instruction to her testimony.  Appellant argues that admission of the testimony was error because the State did not lay the proper predicates and the trial court did not provide a limiting instruction.

“A criminal defendant who chooses to testify may be impeached, contradicted, cross-examined on new matters, and treated in every respect as any other witness, as long as any overriding constitutional or statutory prohibitions for the defendant’s protection are honored.”
(footnote: 5)  Usually, a witness may not be impeached on a collateral matter.
(footnote: 6)  But “when an accused testifies gratuitously as to some matter that is irrelevant or collateral to the proceeding, as with any other witness[,] he may be impeached by a showing that he has lied or is in error as to that matter.”
(footnote: 7)
 Article 38.22, section 5 of the Texas Code of Criminal Procedure allows the admission “of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness” even if the other requirements of Article 38.22, such as the recording of the statement and the giving of the warnings, are not met.
(footnote: 8)  On appeal, Appellant does not raise a voluntariness issue.  From our review of his testimony and the rebuttal testimony of Smith and Herndon, the rebuttal testimony contradicted Appellant’s testimony about the charged offenses as well as the collateral matter of his drug usage.  The rebuttal testimony therefore went to Appellant’s credibility.  Consequently, we hold that the trial court properly admitted the rebuttal evidence.

But when evidence is offered for impeachment of a testifying defendant, the rule that a limiting instruction must be provided to the jury at the time the testimony is offered still applies.
(footnote: 9)  Appellant complains about the omission of a timely limiting instruction for the testimony of both rebuttal witnesses.  But the record shows that he refused an adequate instruction as to the testimony of Smith.  Under the doctrine of invited error, a criminal defendant may not create error, whether statutory or constitutional, and then submit that error as a basis for appellate relief.
(footnote: 10)  On the other hand, Appellant timely requested a blanket limiting instruction for the testimony of Herndon, which the trial court summarily denied.  We hold that the trial court erred by not giving the jury a timely limiting instruction regarding Herndon’s testimony.

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.
(footnote: 11)  Because Appellant has not raised constitutional concerns on appeal, we treat this as an error in the admission of evidence, which is not constitutional.
(footnote: 12)  Consequently, rule 44.2(b) is applicable.
(footnote: 13)  Therefore, we are to disregard the error unless it affected Appellant’s substantial rights.
(footnote: 14)  A substantial right is affected when the error had a substantial and injurious effect or influence on the jury’s verdict.
(footnote: 15)  In making this determination, we review the record as a whole.
(footnote: 16) The jury charge provided that none of Appellant’s statements should be considered for any purpose unless the jury believed beyond a reasonable doubt that the statement in question was voluntary, but that his statements could be used as evidence against him if the jury believed that they were voluntary.  On the other hand, the charge then went on to say that Appellant’s statements could be admitted if written and signed by him after he waived his 
Miranda
 rights.  No instruction was given that clearly limited the use of Appellant’s oral statements to the issue of his credibility.

But the evidence contained in Appellant’s properly admitted written statements, as well as other evidence in the case, such as fingerprints, was sufficient to sustain his convictions.  We cannot say that the additional  testimony concerning his pointing out houses that he had burglarized and his other oral statements to police officers and to his parole officer added significantly to the evidence against him.  We therefore cannot say that the omission of the limiting instruction had a substantial and injurious effect or influence on the jury’s verdict.  We overrule Appellant’s first point.

Jury Charge Error

In his second point, Appellant contends that the trial court erred by not giving an application paragraph on voluntariness and by not giving a lesser included instruction on theft in cause number 2-04-316-CR.  The trial court instructed the jury as follows on the issue of voluntariness:

You are instructed that a statement of the defendant may be used as evidence against him if the jury believes beyond a reasonable doubt that the statement was freely and voluntarily made by the defendant without compulsion or persuasion.  Therefore, unless the jury believes beyond a reasonable doubt that the statement was freely and voluntarily made without compulsion or persuasion, or if you have a reasonable doubt thereof, you shall not consider any statement of the accused for any purpose nor any evidence obtained as a result thereof.

This is a proper application paragraph on the issue of voluntariness.
(footnote: 17)
 Appellant also complains that he was improperly denied an instruction on the lesser included offense of theft in one of the cases.  The indictment in cause number 2-04-316-CR charged that Appellant “did then and there intentionally or knowingly enter a habitation, without the effective consent of [the complainant], the owner thereof, with intent to commit theft and did attempt to commit and commit theft.”  Knowing possession of recently stolen property is a type of theft.
(footnote: 18)  That is, Appellant could have intentionally or knowingly possessed the property stolen in the burglary without entering the house and without participating in the burglary as a party.  Appellant, however, disputed a necessary element of theft when he denied knowing that the money and ring that his friend L.J., whom Appellant blamed for the burglary, had allegedly given him were stolen.
(footnote: 19)  Because there was no evidence that Appellant knowingly possessed stolen property that he did not obtain through burglary, he was not entitled to a lesser included instruction on theft.
(footnote: 20)  We overrule Appellant’s second point.

Denial of Mistrial for Prosecutorial Misconduct

In his fourth point, Appellant complains that the trial court abused its discretion by failing to grant a mistrial because of prosecutorial misconduct, specifically, the asking of improper questions and the eliciting of improper evidence on direct examination.  
Prosecutorial misconduct usually involves a deliberate violation of a court order coupled with “misconduct so blatant as to border on being contumacious.”
(footnote: 21)  In 
Ladd v. State,
(footnote: 22) the Texas Court of Criminal Appeals held,

A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.  Thus, a trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error. The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case.  The asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard.  A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. A trial court's denial of a mistrial is reviewed under an abuse of discretion standard.
(footnote: 23)

Officer Bolin testified without objection that he recognized Appellant when he saw him walking down the street.  When the prosecutor tried to elicit information from the officer that he had handcuffed Appellant based on what he knew of Appellant and the crime he was investigating, Appellant objected.  At the hearing outside the jury’s presence, the trial court made clear that the officer should not delve into his prior knowledge of Appellant.  After the hearing, the prosecutor again asked, “Now, based upon your knowledge of the suspect and the crime that you were investigating at that time, is that why you handcuffed him?”  The trial court sustained Appellant’s objection and granted his request for an instruction to disregard but denied his motion for mistrial. With the witness Officer Taylor, the prosecutor repeatedly violated the judge’s instructions not to attempt back door hearsay.  The prosecutor asked Taylor about his conversation with Appellant, and Taylor testified that he wanted Appellant to go with him to point out all the houses that he had broken into.  When Taylor tried to elaborate by testifying about Appellant’s gestures or oral statements, the trial court sustained Appellant’s objection and granted his request for an instruction to disregard but denied his motion for mistrial.  This scenario played out four times in four pages of direct examination.

Although we strongly disapprove of the trial prosecutor’s conduct of ignoring the trial court’s orders in these instances, we cannot say that the prosecutor’s conduct was so “prejudicial that expenditure of further time and expense”  would have been “wasteful and futile.”  Therefore, based only on the facts of these cases, we cannot say that the 
trial court’s
 conduct in denying a mistrial amounted to an abuse of discretion.

We are mindful, however, of the fifth 
Harris
(footnote: 24) prong, which requires us to determine whether declaring the misconduct harmless would be likely to encourage the State to repeat it with impunity.  It is disturbing that the prosecutor persevered in this misconduct despite the judge’s repeated rebukes.  We are at a loss to explain this conduct.  Yet the remainder of the record reveals no other instance of such misconduct.  Nor is there any evidence that the prosecutor had engaged in similar conduct previously.  The record in this case does not create within us a conviction that declaring the misconduct harmless would be likely to encourage the State to repeat it with impunity.  We therefore overrule Appellant’s fourth point.

Conclusion

Having overruled Appellant’s four points, we affirm the trial court’s judgments.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

CAYCE, C.J., concurs without opinion.

PUBLISH

DELIVERED:  June 9, 2005

FOOTNOTES
1:
See Michigan v. Mosley
, 423 U.S. 96, 105, 96 S. Ct. 321, 327 (1975). 

2:
See Davis v. United States
, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355 (1994); 
Castillo v. State
, 742 S.W.2d 1, 4-5 (Tex. Crim. App. 1987).

3:
Miranda v. Arizona
, 384 U.S. 436, 86 S. Ct. 1602 (1966).

4:
See 
Tex. R. Evid.
 801(e)(2).

5:
Sanchez v. State
, 707 S.W.2d 575, 577 (Tex. Crim. App. 1986); 
Cuellar v. State
, 613 S.W.2d 494, 495 (Tex. Crim. App. 1981).

6:
Ramirez v. State
, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990).

7:
Hammett v. State
, 713 S.W.2d 102, 105 (Tex. Crim. App. 1986).

8:
See
 
Tex. Code Crim. Proc. Ann.
 art. 38.22, § 5 (Vernon 2005); 
United States v. Havens
, 446 U.S. 620, 627, 100 S. Ct. 1912, 1916 (1980); 
Harris v. New York
, 401 U.S. 222, 226, 91 S. Ct. 643, 646 (1971); 
Lykins v. State
, 784 S.W.2d 32, 35-36 (Tex. Crim. App. 1989); 
Garza v. State
, 18 S.W.3d 813, 826 (Tex. App.—Fort Worth 2000, pet. ref’d).

9:
Hammock v. State
, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001).

10:
See Garcia v. State,
 919 S.W.2d 370, 393-94 (Tex. Crim. App. 1994) (op. on reh'g); 
see also Prystash v. State,
 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (distinguishing waiver from invited error), 
cert. denied,
 529 U.S. 1102 (2000).

11:
Tex. R. App. P.
 44.2.

12:
See Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

13:
Tex. R. App. P.
 44.2(b).

14:
Id.
;
 see Mosley v. State,
 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
,
 
526 U.S. 1070 (1999); 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d) (en banc).

15:
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall
, 961 S.W.2d at 643.

16:
Kotteakos
, 328 U.S. at 764-65, 66 S. Ct. at 1248.

17:
See Burdine v. State
, 719 S.W.2d 309, 320 (Tex. Crim App. 1986), 
cert. denied
, 480 U.S. 940 (1987).

18:
See
 
Tex. Penal Code Ann.
 § 31.03(b)(2) (Vernon Supp. 2004-05).

19:
See id.

20:
See
 
Feldman v. State
, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002); 
Moore v. State
, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998)
.

21:
Landry v. State
, 706 S.W.2d 105, 111 (Tex. Crim. App. 1985), 
cert. denied
, 479 U.S. 871 (1986).

22:
3 S.W.3d 547 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000).

23:
Id.
 at 567.

24:
Harris v. State
, 790 S.W.2d 568, 585-87 (Tex. Crim. App. 1989).