

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00132-CR

CODY LEE HORNER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

## FROM THE 415TH DISTRICT COURT OF PARKER COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Cody Lee Horner appeals his conviction for possessing less than

one gram of methamphetamine.[2]  In three points, he contends that the evidence

is insufficient to sustain his conviction, that the trial court erred by denying his

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Health & Safety Code Ann. §§ 481.102(6), .115(b) (West 2010).

motion to suppress, and that the court abused its discretion by denying his motion for mistrial. We affirm.

## Background Facts

One afternoon in October 2008, Anne Hollis, who is an officer with the Parker County Sheriff's Office (PCSO), went to a house near Agnes to serve an arrest warrant on Linda Scroggins. Officer Hollis called for backup when she saw a woman matching Scroggins's general description peering out from a window.[3] Tim Oglesby, a PCSO investigator, met Officer Hollis at the house, and another deputy also arrived there. The three officers spent somewhere between fifteen and thirty minutes knocking on the doors and windows of the house and announcing their presence. Although Officer Hollis heard movement by the occupants of the house throughout the time that she knocked and announced, the occupants did not overtly respond to her. The officers eventually received permission from a supervisor to force entry into the residence.

After entering the house and walking into the living room area, Investigator Oglesby secured the two occupants of the house, appellant and Williamson, who were unsurprised that the officers were there.[4] Investigator Oglesby noticed that

---

[3]Later, officers determined that the woman looking out from the window was Angela Williamson, who also lived in the house.

[4]Scroggins arrived at the house at a later point, and Officer Hollis arrested her.

the television in the living room was showing video surveillance of the front of the house, including all of the officers' cars. After Investigator Oglesby looked for Scroggins but did not find her, he asked appellant whether there was anything illegal in the house. According to Investigator Oglesby, appellant "said the only thing that he had in the house was a bong."

Investigator Oglesby obtained appellant's verbal consent to search the house.[5] Appellant told Investigator Oglesby that the house was his and had belonged to his family for several years. In the bedroom that appellant had walked out of when the officers entered the house, Investigator Oglesby discovered a lockbox under a bed. Investigator Oglesby asked appellant about the contents of the lockbox, and appellant "just dropped his head." Appellant then instructed Williamson "to get the key and open the box." Williamson retrieved the key to the lockbox from a different box, and Investigator Oglesby opened the lockbox. In it, he found a large amount of baggies, glass pipes that may be used for consuming drugs, straws that may be used to snort drugs, mechanical scales, and a film canister containing a "crystal-type substance" that he believed to be methamphetamine. Investigator Oglesby took the lockbox and its items to an evidence room. A PCSO property clerk took the suspected drug

---

[5]As explained below, appellant disputes that he gave consent, and he presented evidence that contradicts some of the facts recited in this section.

3

to a lab, where a forensic scientist found that the substance weighed .08 of a gram and contained methamphetamine.

A grand jury indicted appellant for possessing less than one gram of methamphetamine. Appellant, who was represented by appointed counsel at trial, pled not guilty, but the jury found him guilty. During the punishment phase of the trial, appellant pled true to two enhancement allegations, and after the jury heard three witnesses testify (including appellant's mother), it assessed appellant's punishment at ten years' confinement. The trial court sentenced him to the same punishment, and he brought this appeal.

### The Sufficiency of the Evidence

In his first point, appellant argues that the evidence is insufficient to sustain his conviction. To support a conviction for unlawful possession of a controlled substance, the State must link the accused to the contraband by proving that the accused exercised control, management, or care over the contraband and knew that the substance he possessed was contraband. *See* Tex. Health & Safety Code Ann. § 481.002(38) (West 2010); *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005) (explaining that the State must show that the accused's connection with the drug was more than fortuitous); *Beall v. State*, 237 S.W.3d 841, 849 (Tex. App.—Fort Worth 2007, no pet.).

4

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that

5

resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

Appellant argues that his alleged possession of methamphetamine is "negated by the evidence of Angela Williamson that the drugs were hers and that [he] knew nothing of them." Williamson, who was engaged to appellant at the time of his arrest and at the time of the trial, testified to the following facts, among others:

- the items in the lockbox belonged to her, and appellant did not know of their existence;

- she had smoked methamphetamine a few times a week in the bathroom while appellant was asleep;

- she bought the drugs from "somebody [she] knew," and appellant never knew that she was buying drugs;

-  she hid the lockbox, its key, and its contents from appellant because he "was drug-free and [she] wasn't[,] and [she] didn't want to lose him";

- she told Investigator Oglesby at the scene that the items in the lockbox belonged to her; and

- Investigator Oglesby found and opened the lockbox himself, without consent, and he planted drug paraphernalia in the lockbox.[6]

---

[6]After Williamson finished her testimony, the State recalled Investigator Oglesby. He denied planting evidence, and he restated his testimony that appellant directed Williamson to get the lockbox's key and to unlock the lockbox. He denied that Williamson told him that the methamphetamine belonged to her.

6

Appellant contends that Williamson's testimony precluded the possibility that the jury could have rationally found that he possessed methamphetamine. Viewed in isolation, Williamson's testimony could have supported a finding that appellant did not possess the methamphetamine. Investigator Oglesby, however, gave testimony that contradicted Williamson's statements, and we must view the evidence in the light most favorable to the jury's verdict. *See Clayton*, 235 S.W.3d at 778. In weighing the conflicting evidence, the jury was charged with resolving the witnesses' credibility. *Id* at 779.; *see Dotson v. State*, 146 S.W.3d 285, 295 (Tex. App.—Fort Worth 2004, pet. ref'd) (explaining that a jury is free to "accept or to reject all or part of . . . defensive evidence"). The jury's guilty verdict indicated that it disbelieved Williamson's testimony. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *see also Baker v. State*, No. 02-10-00079-CR, 2010 WL 4813117, at *6 (Tex. App.—Fort Worth Nov. 24, 2010, pet. ref'd) (mem. op., not designated for publication) ("By returning a guilty verdict, the jury indicated its choice to believe the State's witnesses . . . .").

Appellant's only challenge to the sufficiency of the evidence involves the competing testimony of Investigator Oglesby and Williamson. Nonetheless, apart from that issue, we conclude that the conviction was adequately supported by circumstantial evidence. When police discover contraband in an area not possessed exclusively by the accused, additional independent facts can

7

establish a link between the accused and the contraband. *See Beall*, 237 S.W.3d at 849–50. These facts may be direct or circumstantial, and their total number is less significant than the logical force of the link they establish. *Id*. at 850. In *Beall*, we concluded that the evidence was sufficient to sustain a conviction for possession of methamphetamine when the accused made incriminating statements to the police.[7] *Id.*

Investigator Oglesby testified that when he asked appellant about the contents of the lockbox, "[appellant] just dropped his head." Investigator Oglesby interpreted this action as "a sign of guilt." This evidence provided a rational reason for the jury to infer that appellant knew of the methamphetamine in the lockbox. *See Hooper*, 214 S.W.3d at 16 (defining a permissible inference as "a conclusion reached by considering other facts and deducing a logical consequence from them").

Next, the officers testified that they repeatedly knocked on all parts of appellant's house and announced their presence for no less than fifteen to twenty minutes before they forced entry into the house. The jury could have reasonably

---

[7]Other factors may link a defendant to the possession of a controlled substance, such as the defendant's presence during the search, the defendant's proximity to and the accessibility of the drugs, whether the defendant possessed other contraband or narcotics when arrested, and whether the defendant owned or had the right to possess the place where the drugs were found. *Tucker v. State*, 183 S.W.3d 501, 510 (Tex. App.—Fort Worth 2005, no pet.).

inferred that appellant and Williamson were attempting to hide evidence of the methamphetamine during that time. Also, the lockbox was found in the bedroom that appellant had been in before he went to the living area of the house. According to Investigator Oglesby, after appellant dropped his head in response to Investigator Oglesby's question, appellant instructed Williamson to get the key and open the lockbox for Oglesby. The jury could have rationally determined that this evidence established appellant's control of the lockbox, and the jury could have therefore inferred that appellant knew of its contents.

Viewing all of the evidence in the light most favorable to the jury's guilty verdict, we hold that the jury could have rationally determined, beyond a reasonable doubt, that appellant was guilty of possessing the .08 of a gram of methamphetamine that Investigator Oglesby found in the lockbox. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We overrule appellant's first point.

### The Denial of Appellant's Motion to Suppress

In his second point, appellant contends that the trial court erred by denying his motion to suppress the evidence that the officers obtained in his house. Before trial, appellant filed a motion to suppress in which he generally contended that all of the physical evidence that the State would offer at trial was obtained in violation of federal and state law. Appellant did not secure a pretrial hearing on

9

his motion. At trial, he sought suppression of the evidence only after Investigator Oglesby testified with no objection about getting appellant's consent to search the house and finding the evidence in the lockbox.[8]

The State contends that appellant forfeited any complaint concerning the admission of the evidence obtained by Investigator Oglesby in appellant's house. We agree. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not

---

[8]Outside of the jury's presence, appellant testified that he was renting the house where the officers found the drugs, that he did not give consent for a search of the house, and that Investigator Oglesby found the key to the lockbox and opened it on his own. On appeal, appellant argues that the evidence should have been suppressed because (1) Scroggins's arrest warrant did not authorize a search of the house or the detention of appellant and Williamson, (2) if appellant gave consent, he did not do so until the search had already started, and (3) the search was conducted without a search warrant and without the existence of probable cause or exigent circumstances.

been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

In *Ratliff v. State*, we explained,

> To preserve error about the illegal seizure of evidence, a defendant must either file a motion to suppress and obtain a ruling on the motion or timely object when the State offers the evidence at trial. If the defendant waits until the State offers the evidence at trial, the objection to the evidence must be made before a witness gives substantial testimony about it.

> In *Tell v. State*, an aggravated robbery case, the defendant attempted at trial to suppress the admission of a ski mask that police officers obtained from his residence without a search warrant or consent. 908 S.W.2d 535, 538, 543 (Tex. App.—Fort Worth 1995, no pet.). But the defendant allowed a police officer to answer four questions about seizing the ski mask before objecting to the evidence. *Id.* On appeal, we concluded that "[b]ecause Tell failed to object at the time the ski mask was mentioned and allowed further questions and answers before finally objecting," he "waived any error in the admission of the ski mask." *Id.* at 544.

> . . . .

> . . . [A]ppellant filed a motion to suppress evidence but did not obtain a pretrial hearing or ruling on the motion. . . . [A]ppellant then allowed [a detective] to testify about the evidence extensively before objecting to the admission of the State's physical evidence . . . .

> We conclude that, as in *Tell* . . . appellant's failure to object at the time [the detective] specifically described the physical evidence and explained how he found that evidence forfeited any error associated with his objection to the State's later introduction of the evidence.

320 S.W.3d 857, 860–62 (Tex. App.—Fort Worth 2010, pet. ref'd) (some citations omitted); *see also Garza v. State*, 126 S.W.3d 79, 82 (Tex. Crim. App. 2004)

11

("By affording the judge an opportunity to rule on an objection, he is able to decide whether the evidence is admissible. If the judge decides the evidence is inadmissible, the jury is shielded from hearing it.").[9]

This case is controlled by the principles explained in *Ratliff*. Appellant filed a motion to suppress evidence months before trial. He did not obtain a ruling on the motion, however, until after the lockbox had been admitted into evidence and Investigator Oglesby had testified extensively, without objection, about the contents of the lockbox, including the crystal-like substance that he believed to be methamphetamine. We hold that because appellant did not timely obtain a ruling on his motion to suppress or object when testimony about the evidence at issue was offered, he forfeited his complaint about the admission of the evidence. *See* Tex. R. App. P. 33.1(a)(1), (2); *Ratliff*, 320 S.W.3d at 860–62; *Thomas v. State*, 884 S.W.2d 215, 216–17 (Tex. App.—El Paso 1994, pet. ref'd). We overrule appellant's second point.

## The Denial of Appellant's Motion for Mistrial

In his third point, appellant contends that the trial court abused its discretion by denying his motion for mistrial after sustaining a relevancy objection

---

[9]When a pretrial motion to suppress is filed and the defendant requests a hearing on the motion, error may be preserved despite a ruling by the trial court during trial if the court informs the parties that it will not rule until all the evidence sought to be suppressed has been admitted. *See Garza*, 126 S.W.3d at 84–85. There was no such circumstance in this case.

12

to the admission of evidence. During the State's direct examination of Investigator Oglesby, the prosecutor asked him, "As you were going through the bedrooms, was there anything that caught your eye?" Investigator Oglesby responded affirmatively and then said that he had noticed a "rifle hanging on a gun rack." Appellant objected to that testimony, and after the trial court discussed the objection with the prosecutor, it sustained the objection and immediately instructed the jury to disregard the testimony. The court, however, denied appellant's motion for mistrial.[10]

When a trial court sustains an objection to evidence and instructs the jury to disregard it but denies a defendant's motion for mistrial, we must decide whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004); *Orr v. State*, 306 S.W.3d 380, 403 (Tex. App.—Fort Worth 2010, no pet.) (stating that we must uphold the trial court's denial of a motion for mistrial if the ruling was in the zone of reasonable disagreement). Only in extreme circumstances, when the prejudice caused by improper conduct is "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required. *Hawkins*, 135

---

[10]The State argues in part that the prosecutor's question and Investigator Oglesby's response were proper. Based on our analysis below, we decline to decide whether the trial court correctly sustained appellant's objection to the testimony about the rifle.

13

S.W.3d at 77; *see Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) ("[O]rdinarily, a prompt instruction to disregard will cure error associated with an improper question and answer."), *cert. denied*, 542 U.S. 905 (2004). In determining whether a trial court abused its discretion by denying a mistrial, courts balance three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of conviction absent the misconduct. *See Hawkins*, 135 S.W.3d at 77. The trial court is in the best position to balance these factors. *Orr*, 306 S.W.3d at 404.

Without elaboration, appellant contends that the trial court's "instruction to disregard did not cure the error implanted in the jury's mind."[11] Appellant does not explain how Investigator Oglesby's answer about the presence of a rifle in the house influenced the jury to such an extent that the instruction to disregard could not have cured any prejudice. *See id.* (stating that to warrant a mistrial, an improper question must be so clearly prejudicial that the impression it makes on the jurors cannot be withdrawn). "In the absence of evidence that it did not, we presume the jury followed the trial court's instruction to disregard the improper question." *Id.* at 405.

---

[11]As the State argues, although appellant was concerned about Investigator Oglesby's testimony about the rifle, he did not make objections to Williamson's later repeated testimony, which was elicited by his own questions, about the fact that the officers had found a gun.

14

The jury's choice to convict appellant, which was necessarily based on its disbelief of Williamson's testimony that the methamphetamine belonged solely to her, was not likely affected by one question and response about the presence of a rifle in the house, because the presence of the rifle did not directly impact Williamson's credibility. Also, although the State mentioned the rifle in its opening statement, neither party discussed the presence of the rifle during closing arguments, so Investigator Oglesby's testimony about it was not likely the jurors' predominant consideration during their deliberation of appellant's guilt. Thus, in considering the factors stated above, we hold that the trial court did not abuse its discretion by denying appellant's motion for mistrial. *See id.* at 403–04; *Polk v. State*, 170 S.W.3d 661, 668 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding that although a prosecutor repeatedly violated the trial court's instructions to not elicit improper testimony, the trial court did not abuse its discretion by denying motions for mistrial when the court gave prompt instructions to disregard the testimony). We overrule appellant's third point.

## Conclusion

Having overruled all of appellant's points, we affirm the trial court's judgment.

                                                    TERRIE LIVINGSTON
                                                    CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER, J.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 28, 2011