

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00099-CR

_____


JAMES FRIEND, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 14F0439-102


Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

James Friend pled guilty to murdering Larry Gray, who had been dating Friend's estranged wife, Traci Friend. Friend submitted the matter of punishment to the jury, which rejected Friend's sudden passion defense and assessed punishment at life in prison. On appeal, Friend asserts that the trial court erred in (1) refusing to allow him to introduce an alleged statement from Gray that he would "put his hands on" a woman if she gave him "lip"; (2) in refusing to allow him to cross-examine Gray's brother about Gray's drug history; and (3) in refusing to grant a mistrial when a child witness appeared in court to testify with a "comfort doll" without prior request and approval by the trial court. Having reviewed the record, the parties' argument, and the applicable law, we find no error and affirm the trial court's judgment and sentence.

### I.  Introduction and Summary of the Facts

Friend does not challenge the sufficiency of the evidence. Accordingly, we summarize only those facts necessary to give context to our analysis of Friend's points of error.

Friend and Traci had been married approximately eleven years, during which time they separated and reunited on more than one occasion. At the time that Friend killed Gray, he had been living outside the marital home for approximately two years, although he had left many of his possessions behind and occasionally stayed there overnight. Traci had three sons from a previous relationship, and Friend and Traci had a daughter together. Despite their separations, Friend continued to visit with all of the children. Also, the couple communicated daily through text messaging, usually about visitation.

After Friend's last separation, Traci began dating Larry Gray.  Previously, Gray had lived near Traci's mobile home.  Although the record does not clarify the nature of their relationship, at one point, Gray stayed regularly at the Friends' home with Traci and the children.  The record also suggests that Gray was in the process of moving into the residence.

On the day of the murder, Friend appeared at the home unannounced.  At that time, the children were present, but Traci and Gray were not.  When he entered the residence, Friend was holding a pistol and moved the children into the bedroom.  When they were in the bedroom, Friend asked them, "[W]ho is mama's boyfriend?"  When they told Friend that Traci had been dating Gray, Friend told them that he was going to kill Gray.

According to Friend's and Traci's daughter, K.T., Friend also said,"I'm going to kill your mommy, too," but later "changed his mind to keep her."  He also said that there were "four or five or six people in the cemetery" next to the residence and that, "when the cops came, it was going to be a blaze of glory."  According to Traci's son, M.T., Friend told the children that he had bullets for Gray, Traci, and himself.  Friend himself testified that he was thinking he had "two [bullets] for Traci, . . . two for [Gray], and . . . one for himself."

When Traci and Gray returned to the residence, Traci went in first and saw Friend in the bathroom.  Friend pushed past her, traveled to the kitchen where Gray was located, and shot Gray multiple times.  M.T. testified that Friend then beat Gray with the pistol before leaving.  Gray died at the residence.

3

## II.    Points of Error

### A. The Trial Court Did Not Err In Disallowing Gray's Alleged Out-Of-Court Statement to Friend

#### 1. Standard of Review

Friend asserted the sudden passion defense found in Section 19.02(d) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 19.02(d) (West 2011). That Section provides,

> At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

*Id*. In support of his defense, Friend sought to testify that, during a fishing trip with Gray, Gray told him "that he don't listen to their [women's] lip, and he'll put his hands on them if he have [sic] to." Friend denied offering the statement for the truth of its substance, but instead to demonstrate "the immediate influence of sudden passion arising from an adequate cause" when he learned that Traci was dating Gray. The State objected to this testimony, complaining that it would constitute hearsay from a deceased declarant who would not be able to rebut or contradict the statement. The trial court sustained the State's objection, but it did allow Friend to testify that he "was under the impression that [Gray] hit women."

"A trial court's decision to admit or exclude evidence is reviewed only for abuse of discretion." *Allen v. State*, 436 S.W.3d 815, 825 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007); *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005)). "A trial court does not abuse its discretion if the decision to exclude evidence is within the 'zone of reasonable disagreement.'" *Allen*, 436 S.W.3d at 825–26

4

(quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). Accordingly, "[w]e may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)).

### 2. Application

Friend told the trial court he wanted to introduce the proffered statement to show the effect the statement had on him when he learned Traci was dating Gray. Friend argues that the proffered statement supports his sudden passion defense. Although Friend argues that "a major difference exists between someone saying something directly related versus someone saying something that gives off the impression that a set of circumstances exist," he fails to explain what that difference is and offers no authority to support his argument. Yet, even if Friend fully explained and supported his argument, we would not disturb the trial court's ruling because the trial court did not abuse its discretion.

The trial court was clearly troubled by the attempt to present a statement from the deceased victim of Friend's confessed murder.

> THE COURT: But here you're telling me the declarant who is deceased and absolutely cannot testify made a statement that he lays his hands on women, words to that effect, and he believes it. I can't see how it's not being offered for the truth of the matter asserted, [counsel].

Nevertheless, the trial court did not exclude the evidence in its entirety, but instead met Friend halfway and allowed him to testify to his belief about Gray's alleged treatment of women. The trial court's compromise allowed Friend to put before the jury his belief about Gray's alleged conduct towards women, which was relevant to his sudden passion defense, without violating the hearsay rule's prohibition against outside statements offered for the truth of the matter asserted.

5

On this record, we cannot say that the trial court's decision was outside the zone of reasonable disagreement. *See Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

**B.      Friend Failed To Preserve Any Complaint That The Trial Court Erred In Refusing To Allow Him To Introduce Gray's Drug History**

**1.  Standard of Review**

Gray's brother, Tyrone Venable, testified on direct examination for the State that Gray lived with him "[m]aybe a few weeks after he got out, maybe a few weeks." On cross-examination, Friend's counsel asked Venable to explain where Gray "got out of" before coming to live with him. The State objected to this question, and the trial court sustained the objection. Friend later made an offer of proof regarding the information he sought to elicit from Venable. Outside the jury's presence, Venable testified (1) that Gray had been in a drug-rehabilitation facility for three or four months prior to coming to live with him, (2) that Gray had not voluntarily attended the facility, but rather was ordered to attend by a court, and (3) that Venable did not know the drug to which Gray was addicted. The trial court ruled that this evidence was inadmissible. On appeal, Friend asserts that the trial court erred in refusing to allow him to introduce this evidence. Friend argues that this information—which he knew about prior to the murder—also factored into his mental state and was relevant to his sudden passion defense.

"To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context." *Sharper v. State*, 485 S.W.3d 612, 615 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 33.1(a)(1)). "Further, the trial court must have ruled on the request, objection, or

6

motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule." *West v. State*, 121 S.W.3d 95, 114 (Tex. App.—Fort Worth 2003, pet. ref'd) (citing TEX. R. APP. P. 33.1(a)(2)).

## 2. Application

We find nothing in the record establishing that Friend made this argument to the trial court. Although he made the offer of proof described above, he did not re-offer that evidence. When Venable finished testifying, Friend refused to allow Venable to be excused as a witness. He explained his refusal by stating to the trial court, "[T]here may be a time when I try to admit that other piece, and you wanted me to call him back later to do it." Yet, the record does not explain what that "other piece" of evidence was.

Also, during a pretrial hearing, it appears that the trial court was aware that Friend intended to base his sudden passion defense, in part, on the theory that Gray had previously sold narcotics, but Friend never explained on the record his theory or his support for that theory. The offer of proof only established that Gray had attended a drug rehabilitation program, and neither Venable nor any other witness testified that Gray had ever sold illegal drugs. Accordingly, there is nothing in the record by which the trial court could have determined if Friend's theory had any factual support. Even if the trial court were generally aware that Gray's history included selling illegal drugs and that it was relevant to Friend's sudden passion defense, there is nothing in the record by which this Court can review the basis for that argument.

"The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful." *Holmes v. State*, 323 S.W.3d 163, 168 (Tex.

7

Crim. App. 2009). While it can be sufficient for a party to summarize the evidence he feels is being wrongfully excluded, such an offer by counsel "should reasonably and specifically summarize the evidence offered and state its relevance unless already apparent." *In re N.R.C.*, 94 S.W.3d 799, 806 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). "If counsel does make such an offer, he must describe the actual content of the testimony and not merely comment on the reasons for it." *Id.*[1] Friend failed to preserve this matter for our review, and we overrule this second point of error.[2]

---

[1]In *Love v. State*, the defendant made an informal offer of proof, telling the court that, under the authority of a recent intermediate appellate court opinion, the defendant intended to seek a jury instruction under Article 38.22 of the Code of Criminal Procedure. *Love v. State*, 861 S.W.2d 899 (Tex. Crim. App. 1993). The Court of Criminal Appeals found the offer of proof insufficient because counsel "failed to provide the trial judge with a concise statement regarding the content of the testimony he proposed to elicit from the witness." *Id.* at 901. While Friend presented witness testimony to support his offer of proof, neither Venable nor Friend's counsel established how the proffered testimony was relevant to his sudden passion defense.

[2]Friend also argues that the State opened the door to this evidence when Venable said his brother came to live with him when he "got out." Similarly, he argues that M.T. opened the door to this evidence when he testified that Friend responded that Friend called Gray a "crackhead" upon learning that Traci was dating Gray. The door to potentially inadmissible evidence is typically opened when a witness creates the potential for some kind of false impression in the minds of the jurors. *See Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993). Moreover, although "a witness may not be impeached on a collateral matter. . . , when [a witness] testifies gratuitously as to some matter that is irrelevant or collateral to the proceeding[,] . . . he may be impeached by a showing that he has lied or is in error as to that matter." *Polk v. State*, 170 S.W.3d 661, 665 (Tex. App.—Fort Worth 2005, pet. ref'd).

Here, the testimony did not create the potential for any false impression to be left with the jurors. For instance, the witnesses' testimony did not establish that Gray had never used or sold drugs so that additional evidence was necessary to rebut that false allegation. Moreover, there is nothing indicating that the witnesses lied or were mistaken in their testimony; in fact, it is Friend's position that they were being truthful and accurate. Therefore, Friend did not seek to offer evidence to rebut a false impression, or to show the witnesses were lying or were incorrect, but to introduce affirmative evidence on a collateral issue. Consequently, neither of the State's witnesses opened the door to that evidence.

### C. The Trial Court Did Not Err In Refusing To Grant a Mistrial

#### 1. Standard of Review

When Friend's and Traci's daughter, K.F., testified, she brought a doll with her to the witness stand. Friend objected, arguing that the State had failed to secure prior permission for the child to use a "comfort doll" during her testimony in a hearing outside the jury's presence as is required by Article 38.074 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.074(3) (West Supp. 2016). Friend argued that the child's use of the doll without prior hearing constituted unfair surprise and was highly prejudicial to his case. Accordingly, he asked the trial court to order a mistrial. The State responded that it had no idea that the child would bring a doll to the stand and offered to have the child put the doll away. Friend restated his motion for a mistrial, which the trial court denied.

"A trial court's denial of a mistrial is reviewed under an abuse of discretion standard and must be upheld if within the zone of reasonable disagreement." *Brooks v. State*, 420 S.W.3d 337, 340 (Tex. App.—Texarkana 2014, no pet.) (citing *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010)). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). Mistrial is an extreme remedy to be granted "'only when residual prejudice remains' after less drastic alternatives are explored." *Ocon v. State*, 284 S.W.3d 880, 884–85 (Tex. Crim. App. 2009) (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)).

> Less drastic alternatives include instructing the jury "to consider as evidence only the testimony and exhibits admitted through witnesses on the stand," and,

9

questioning the jury "about the extent of any prejudice," if instructions alone do not sufficiently cure the problem. *Arizona v. Washington*, 434 U.S. 497, 521–22, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (White, J., dissenting). Though requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic alternative.

*Id.* at 885. Accordingly, the Court of Criminal Appeals has found that a trial court does not abuse its discretion in denying a motion for mistrial when the defendant does not seek intermediate, lesser alternatives to a mistrial. *See Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).

## 2. Application

The record demonstrates that Friend failed to seek less drastic alternatives to mistrial.[3] Friend could have asked the trial court to excuse the jury and then ask K.F. to relinquish the doll or to keep the doll under the witness desk and outside the jury's view. Friend also could have asked the trial court to excuse the jury and hold the hearing required by Article 38.074. He could have asked the trial court to instruct the jury to disregard the doll and to not let bias or sympathy

---

[3]It is arguable that Friend waived this complaint because he failed to preserve any complaint that the child's use of the doll was error. To begin with, the record does not establish whether the jury even saw the child witness' doll. Yet, even if we assume it did, Texas law allows a child to "have a toy, blanket, or similar comforting item in the child's possession while testifying." TEX. CODE CRIM. PROC. ANN. art. 38.074(3)(a)(1). This procedure may be invoked "[o]n the motion of any party" where the trial court "finds by a preponderance of the evidence" (1) that "the child cannot reliably testify without the possession of the item" and (2) that granting the motion is not likely to prejudice the trier of fact in evaluating the child's testimony." TEX. CODE CRIM. PROC. ANN. art. 38.074(3)(a)(1), (b)(1), (2) (West Supp. 2016). Although Friend complains on appeal that the trial court failed to make the requisite findings that the child could not "reliably testify without" the doll and that the "trier of fact" would "not likely" be "prejudice[d] . . . in evaluating the child's testimony," Friend made no request for these findings. Accordingly, Friend waived any complaint concerning any alleged violation of Article 38.074.

If the trial court did not err in failing to hold the hearing, then it did not err in denying a mistrial. Therefore, it follows that, if Friend waived any complaint that the trial court erred in failing to hold the hearing, he also waived any request for mistrial based on that error. Nevertheless, in the interest of addressing the substance of his complaint, we will address his complaint regarding the trial court's refusal to grant a mistrial.

play any part in its deliberation.  Accordingly, we find the trial court did not abuse its discretion in denying Friend's motion for mistrial.

## III.  Conclusion

For all of the foregoing reasons, we affirm the trial court's judgment and sentence.


Ralph K. Burgess
Justice


Date Submitted:     July 1, 2016
Date Decided:       November 2, 2016

Do Not Publish