

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MICHAEL ANTHONY CARR AKA MICHEAL ANTHONY CARR, | § | No. 08-11-00315-CR |
| Appellant, | § | Appeal from the |
| v. | § | Criminal District Court Number Two |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC#1163387D) |
| | § | |

## O P I N I O N

Appellant, Michael Anthony Carr aka Micheal Anthony Carr, appeals his conviction of possession with intent to deliver cocaine in an amount of four grams or more, but less than two hundred grams. The jury found Appellant guilty of the charged offense and also affirmatively answered a special issue, finding that Appellant used or exhibited a deadly weapon: a firearm during the commission of the offense. At punishment, the jury found two allegations in the Habitual Offender Notice of the indictment to be true and assessed punishment at forty-five years' imprisonment. Appellant raises four issues for our review. We affirm.

## BACKGROUND

On June 25, 2009, Police Officer Jimmy A. Ferguson of the Fort Worth Police

department and his team of SWAT officers executed a no-knock search warrant at 3412 Rufus Street in Tarrant County, Texas. Upon entering the residence, Officer Ferguson encountered Appellant sitting on a couch in the living room. At the time the residence door was opened, SWAT officers also observed a Hispanic male later identified as Manuel Gonzales going into the restroom.[1] Three children that were in Gonzales' custody at that time were also found in a truck in the driveway of the home.

After Appellant was detained and ordered to get up off of the couch, Officer Ferguson observed the butt of a handgun sticking out of the sofa cushion next to the left arm rest.[2] Once the house had been cleared and secured, Officer Ferguson notified his colleague, Officer Alfredo Dominguez, of the weapon's location. Officer Dominguez testified that as a narcotics officer he had training and experience in the identification and recognition of narcotics. Dominguez stated that he was familiar with the quantities of narcotics sold at different levels in the narcotics trade, the amount of narcotics a person would have for personal use, and the quantities of narcotics that are more consistent with dealer amounts.

When Officer Dominguez entered the living room, he saw a weapon[3] between the cushions of the couch and a box of Ziploc sandwich bags on the couch itself. Inside of the Ziploc box, Officer Dominguez found a digital scale and plastic bags containing an off-white substance.[4] Upon further search of the home, police recovered a rusted out weapon from a

---

[1] At trial, when asked if that individual was trying to get away, Officer Alfredo Dominguez replied, "I guess you could say that."

[2] Officer Ferguson testified that the gun was within Appellant's arm reach when Appellant was seated on the couch.

[3] Officer Dominguez testified that the gun was loaded.

[4] Fort Worth Police Department Crime Lab forensic scientist Sharon Patton testified that the Ziploc bags the State submitted as evidence contained a rock-like substance which she determined to be 23.62 grams of cocaine.

bedroom closet and found a water bill addressed to Appellant at 3412 Rufus Street on a nightstand.

Based on the quantity of the suspected controlled substance found at the residence, Officer Dominguez opined that the amount was consistent with a dealer amount. Based on the amount of drugs and the presence of the digital scale, he further opined that Appellant had possession of the drugs with intent to deliver. Dominguez also testified that based on his training and experience, people who sold drugs commonly had weapons with them. According to Dominguez, after Appellant was ultimately arrested and searched, a total of $1,200 cash was found on his person. Officer Dominguez testified that it was sometimes common for drug dealers to have large amounts of cash on them depending on whether they have just bought or sold drugs.

On redirect examination, Officer Dominguez testified that Officer Ferguson told him Appellant had been seated on the left side of the couch. Officer Dominguez stated that when he entered the living room of the residence, the Ziploc Box containing the digital scale was on the right side of the couch and the gun was located between the cushion and the left hand rest. He explained the gun was within reach of a person who would have been sitting to the left of the drug items.

Naheed Lopez, defense counsel's legal assistant, testified on behalf of Appellant. Lopez stated that because a Tarrant County Tax Assessor printout showed that Mario Sosa was the owner of the 3412 Rufus property, she tried to find out if Sosa had owned the property in 2009. Lopez stated that after she obtained a property deed, defense counsel phoned Sosa, but their phone call was never returned. Lopez was unable to question Sosa regarding his connection with the Rufus property.

3

Lopez also attempted to contact and serve a subpoena on Arman Jones in order to try to confirm that Jones resided at the 3412 Rufus address and that Jones had requested that Appellant place his own name on the water bill. According to Lopez, she spoke with Jones, but he refused to give her his address. On cross-examination, Lopez stated she was unable to confirm that Jones was the resident at the Rufus address and that Jones had asked Appellant to put Appellant's name on the water bill.

The jury convicted Appellant as charged in the indictment. At punishment, Appellant pleaded not true to the habitual offender notice, and the State introduced two pen packets into evidence over the objections of Appellant. The jury assessed punishment at forty-five years' imprisonment. This appeal followed.

## DISCUSSION

Appellant raises fours issues on appeal. In Issues One and Two, Appellant challenges the sufficiency of the evidence to support his conviction and to support the jury's affirmative finding he used or exhibited a deadly weapon during the commission of the offense. In Issues Three and Four, he contends the trial court erred in overruling his objections to the State's admission of two pen packets.

### Sufficiency of the Evidence

In determining the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010). The jury is the sole judge of the weight and credibility of the witnesses. *Brooks*, 323 S.W.3d at 899. It is the role of the jury to resolve any conflicts of testimony and to draw rational

4

inferences from the facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). We do not overturn a verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App. 1991). The standard of review is the same for both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 158 (Tex.Crim.App. 1991), *overruled on other grounds, Paulson v. State*, 28 S.W.3d 570 (Tex.Crim.App. 2000).

In Issue One, Appellant argues there is insufficient evidence to support his conviction. Specifically, he contends the State failed to establish Appellant knowingly possessed the narcotics and that the State merely proved he was in the same residence where the narcotics were discovered. Thus, Appellant only challenges the evidence supporting the "possession" component of his conviction.

### Possession of a Controlled Substance with Intent to Deliver

To prove a possession with intent to deliver case, the State must establish the defendant: (1) exercised care, custody, control, or management over the contraband; (2) intended to deliver the contraband to another; and (3) knew the substance he possessed was contraband. *Parker v. State*, 192 S.W.3d 801, 805 (Tex.App. – Houston [1st Dist.] 2006, pet. ref'd); *see* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010). If a defendant does not have exclusive possession of the place where the contraband was found, the State must affirmatively link the defendant to the contraband. *Brown v. State*, 911 S.W.2d 744, 748 (Tex.Crim.App. 1995).

An "affirmative link" may be shown to exist by either direct or circumstantial evidence, and it must establish that the accused's association to the contraband was more than just fortuitous. *See id.* at 747. Affirmative links that may establish the defendant's knowing possession include: (1) whether he was present when the drugs were found; (2) whether the drugs were in plain view;

5

(3) whether the drugs were in proximity to and accessible to him; (4) whether he was under the influence of drugs when arrested; (5) whether he possessed other contraband or drug paraphernalia; (6) whether he made incriminating statements when arrested; (7) whether he attempted to flee; (8) whether he made furtive gestures; (9) whether there was an odor of drugs; (10) whether he owned or had the right to possess the place where the drugs were found; (11) whether the place the drugs were found was enclosed; (12) the amount of drugs found; (13) whether he possessed weapons; and (14) whether he possessed a large amount of cash. *Wingfield v. State*, 197 S.W.3d 922, 927 (Tex.App. – Dallas 2006, no pet.); *see Pettigrew v. State*, 908 S.W.2d 563, 571 (Tex.App. – Fort Worth 1995, pet. ref'd). There is no set formula of facts governing a finding of links sufficient to support an inference of knowing possession of contraband. *Wingfield*, 197 S.W.3d at 928. It is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial, that links an accused to the drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006). Affirmative links are established by the totality of the circumstances. *Beall v. State*, 237 S.W.3d 841, 850 (Tex.App. – Fort Worth 2007, no pet.).

Appellant urges that "the totality of the evidence clearly indicates that Appellant did not possess the narcotics in question as required to uphold his conviction for the offense." We disagree. Here, the evidence shows multiple affirmative links.

Officer Ferguson testified there were a lot of narcotics sales on Rufus Street and he was aware of other drug houses on that street. When police executed the search warrant, Appellant was found sitting on a two-cushion sofa in the living room. On the sofa, in plain view was a loaded handgun and a Ziploc sandwich bag box containing a digital scale and plastic bags with an off-white substance. Forensic testing revealed the substance contained in the plastic bags

6

was 23.62 grams of cocaine. Officer Dominguez considered the amount of contraband found at the residence to be a dealer amount. Based on the amount of drugs and the presence of the digital scale, Officer Dominguez opined Appellant had possession of the drugs with intent to deliver. Appellant was in close proximity to the contraband as he had been the only person sitting on the couch where the cocaine was found. Officer Dominguez explained the weapon would have been within arm's reach of a person sitting to the left of the drug items. A rusted out revolver and a water bill in Appellant's name which listed the Rufus Street address was found in a bedroom of the residence. According to Officer Dominguez's testimony as an experienced narcotics officer, it was common for people who sell drugs to have weapons with them. In addition, $1,200 cash was found on Appellant's person when he was arrested and searched. The jury was entitled to believe the State's evidence and disbelieve defense testimony that the Rufus Street residence was owned by Sosa and that Jones had asked Appellant to put Appellant's name on the water bill. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000) (the jury can accept or reject all or part of the evidence presented); *Hooper*, 214 S.W.3d at 13 (we defer to the jury's responsibility to resolve conflicts, weigh evidence, draw reasonable inferences from the evidence).

When viewed as a whole, the evidence presented tends to affirmatively link Appellant to the cocaine such that a jury could reasonably infer that Appellant possessed the contraband with intent to deliver. *See Evans*, 202 S.W.3d at 166. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Mason v. State*, 905 S.W.2d 570, 574 (Tex.Crim.App. 1995). Therefore, we conclude the evidence is legally sufficient to support Appellant's conviction of possession of the cocaine with

the intent to deliver.   Issue One is overruled.

## Deadly Weapon Finding

In Issue Two, Appellant asserts the evidence is legally insufficient to support the jury's deadly weapon finding.   Appellant maintains the evidence establishes he did not "use or exhibit" the firearm in question during the commission of a narcotics offense and that the firearm was merely located on the couch where he had been sitting.   Appellant contends mere possession of a firearm is insufficient to support the jury's deadly weapon finding.

The Texas Code of Criminal Procedure authorizes the entry of a deadly weapon finding if a deadly weapon was used or exhibited during the commission of a felony offense.   TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West 2006).   The phrase "used or exhibited a deadly weapon" is open to the "broadest possible understanding in context of which it was reasonably susceptible in ordinary English."   *Tyra v. State*, 897 S.W.2d 796, 797 (Tex.Crim.App. 1995). The term "use" means any employment of a deadly weapon, even simple possession, if that possession facilitates the associated felony.   *See Coleman v. State*, 145 S.W.3d 649, 652 (Tex.Crim.App. 2004).   The term "exhibit" requires a weapon be consciously shown, displayed, or presented to be viewed.   *Id*.   Thus, a person can "use" a weapon without exhibiting the weapon, but not vice versa.   *Id*.

In addressing Appellant's second issue, we employ the same standards of review previously discussed.   In doing so, we must determine whether a rational jury could have found beyond a reasonable doubt that Appellant used the weapon to facilitate the commission of the possession and delivery of the cocaine offense.   *Id*.

Here, police found a loaded handgun in between the cushion and left arm rest of the couch, on which Appellant had been seated.   The handgun was in close proximity to the contraband and

8

other drug paraphernalia.   Appellant was found to have $1,200 on his person.   Officer Dominguez testified the gun would have been within arm's reach of a person sitting to the left of the drug items.   Officer Dominguez also testified it was common for drug dealers to have weapons with them.

Viewing the evidence in the light most favorable to the jury's finding, we conclude a rational jury could have determined Appellant "used" the gun during the commission of the underlying felony offense beyond a reasonable doubt.   *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Coleman*, 145 S.W.3d at 652.   Accordingly, we conclude the evidence is legally sufficient to support the jury's affirmative deadly weapon finding.[5]   *See Coleman*, 145 S.W.3d at 654-55 (sufficient evidence supported affirmative deadly weapon finding even though defendant not in house where guns were in same room as safe containing contraband and money); *Gale v. State*, 998 S.W.2d 221, 225-26 (Tex.Crim.App. 1999) (upholding deadly weapon finding where guns found in closet with contraband and cash); *Dimas v. State*, 987 S.W.2d 152, 154 (Tex.App. – Fort Worth 1999, pet. ref'd) (deadly weapon finding supported by legally sufficient evidence where assault rifles present in same place as drugs, and presence of pistol in defendant's bedroom, away from drugs, coupled with officer's testimony that drug dealers customarily have firearms to protect themselves, drugs, and money); *see also Moreno v. State*, 978 S.W.2d 285, 289 (Tex.App. – Fort Worth 1998, no pet.) (concluding defendant "used" weapons found in container lying next to concealed cocaine to facilitate his possession of narcotics with intent to distribute).   Issue Two is overruled.

---

[5]  Having concluded that the evidence was sufficient for the jury to determine whether Appellant "used" a deadly weapon, we need not consider whether he also "exhibited" a deadly weapon.   *See Coleman*, 145 S.W.3d at 652 (noting that a person can "use" a weapon without exhibiting it, but not the other way around).

9

**Admissibility of Pen Packets**

In Issues Three and Four, Appellant argues the trial court erred in overruling his objections and admitting the State's Exhibits Ten and Eleven, two pen packets, during the punishment phase of trial because the pen packets were inadmissible hearsay under Rule 803(8) of the Texas Rules of Evidence and were not properly authenticated under Rule of Evidence 902.

We review a trial court's decision regarding the admissibility of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010); *McDonald v. State*, 179 S.W.3d 571, 576 (Tex.Crim.App. 2005). A trial court abuses its discretion when its decision lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex.Crim.App. 2007). We affirm the trial court's decision if it falls within the zone of reasonable disagreement. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003).

At punishment, Appellant relied on section 493.020 of the Texas Government Code and Article 42.09, section 8(b) of the Code of Criminal Procedure to support his arguments. Under section 493.020 of the Government Code, the Texas Department of Criminal Justice is required to use an official seal to certify documents received by the department pursuant to sections 8(a) and (c) of the Code of Criminal Procedure. TEX. GOV'T CODE ANN. § 493.020(a) (West 2012). The Government Code further provides that the official seal of the department must contain an engraved, five-pointed star in the center with the words "Texas Department of Criminal Justice" around the margin. *See id*. § 493.020(b). Section 8(b) of Article 42.09 of the Code of Criminal Procedure provides:

> The Texas Department of Criminal Justice shall not take a defendant into custody under this article until the designated officer receives the documents required by Subsections (a) and (c) of this section. The designated officer shall certify under the seal of the department the documents received under Subsections (a) and (c) of this section. A document certified under this subsection is self-authenticated for

10

the purposes of Rules 901 and 902, Texas Rules of Evidence.

*See* TEX. CODE CRIM. PROC. ANN. art. 42.09, § 8(b) (West 2006).

Appellant maintains that the pen packets are not self-authenticated as required by Rule 902 of the Rules of Evidence because: (1) the pen packets were certified under the seal of the State of Texas instead of the Seal of the Texas Department of Criminal Justice; and (2) those seals were not engraved, but were merely copies of the wrong seal.

To resolve Appellant's issues regarding the admission of the two pen packets, it is unnecessary for us to consider whether Article 42.09, section 8(b) and the related section of the Government Code were satisfied because Article 42.09 is not the only manner by which pen packets may be authenticated. *See Hawkins v. State*, 89 S.W.3d 674, 678-79 (Tex.App. – Houston [1st Dist.] 2002, pet. ref'd) (finding section 8(b) of Article 42.09 is not the exclusive means of authenticating pen packets); *Barker v. State*, 931 S.W.2d 344, 348 (Tex.App. – Fort Worth 1996, pet. ref'd) (finding that Article 42.09 is not the sole method of authenticating a pen packet). A pen packet consists of authenticated records from the Texas Department of Corrections or other penal institution regarding a person's prior convictions. *See Beck v. State*, 719 S.W.2d 205, 210 (Tex.Crim.App. 1986). It is well established that pen packets are admissible as an exception to the hearsay rule if they are properly authenticated as public records. *See* TEX. R. EVID. 803(8), 901(a), 901(b)(7), 902(4); *State v. Handsbur*, 816 S.W.2d 749, 750 (Tex.Crim.App. 1991); *Reed v. State*, 811 S.W.2d 582, 584 (Tex.Crim.App. 1991) A document may be properly authenticated under either Rules of Evidence 901 or 902, but it need not be authenticated under both. *Reed*, 811 S.W.2d at 586.

In this case, each of the pen packets tendered by the State were accompanied by an affidavit of the Chairman of Classification and Records for the Texas Department of Criminal

11

Justice – Correctional Institutions Division (TDCJID) certifying that the attached information concerning Appellant "are true and correct copies of the original records" on file in her office and maintained in the regular course of business. The affidavits carry the seal of the State of Texas. Additionally, both pen packets contained Appellant's fingerprint cards, which the State matched to Appellant by calling a fingerprint expert to testify at trial. The pen packets also contained other identifying information such as Appellant's photograph, weight, hair and eye color, and date of birth. Therefore, based on the foregoing, the certification of the pen packets by the TDCJID Chairman of Classification and Records provides sufficient evidence to support a finding that the pen packets are what the State claimed them to be, and as such, the pen packets were properly authenticated under Rules of Evidence 901 and 902(4) ("Certified Copies of Public Records"). *See Reed*, 811 S.W.2d at 587 (finding pen packet was sufficiently authenticated and admissible under Rule 901 and 902(4) because copies were correct copies upon which TDCJID relied upon and State further corroborated authenticity of documents by providing testimony of fingerprint expert confirming that fingerprints in pen packet matched those of appellant). Accordingly, we conclude the pen packets were not inadmissible hearsay and the trial court did not abuse its discretion in overruling Appellant's objections and admitting the pen packets into evidence. *See Hawkins*, 89 S.W.3d at 678 (finding no error in admission of pen packets because document that was self-authenticating under Rule 902 need not satisfy Article 42.09, section 8(b) requirements); *Barker*, 931 S.W.3d at 348-49 (although pen packets did not comply with requirements of Article 42.09, the pen packets were not admitted in error because the documents met the requirements of Rule 902(4)). Because we have concluded that there was no error, we do not address Appellant's harm argument. Issues Three and Four are overruled.

## CONCLUSION

The judgment of the trial court is affirmed.


GUADALUPE RIVERA, Justice

October 30, 2013

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

13